## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDRIA ELIAS, ET. AL. : | |
| Plaintiffs, : | Civil Action No. 06-2448(KSH) |
| v. : | |
| : | REPORT & RECOMMENDATION |
| UNGAR'S FOOD PRODUCTS : | |
| INC., ET AL., : | |
| Defendants : | |

## I. INTRODUCTION

This matter is before the Court on plaintiff's motion for class certification pursuant to Rule 23. The Honorable Katharine S. Hayden referred this motion to the Undersigned for a report and recommendation. For the reasons set forth herein, the Undersigned recommends that Her Honor grant the motion to certify a class to pursue claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2, and for breach of express warranty under N.J.S.A. 12A:2-101, but deny the motion to certify a class to pursue the common law claim of negligent misrepresentation. The Court decided this motion without oral argument pursuant to Fed. R. Civ. P. 78 and Local Civ. R. 78.1.

## II. FACTS AND PROCEDURAL HISTORY

When addressing a motion for class certification, a court does not consider the merits of the case, but rather must assume that the allegations contained in the complaint are true. See In

1

re Life USA Holding, Inc., 190 F.R.D. 359, 364 (E.D. Pa. 2000), rev'd on other grounds, 242

F.3d 136 (3d Cir. 2001).  Thus, according to the Amended Complaint ("Compl."), Alexandria

Elias, Roxanne Scher, Dolores Baez and Jennifer Tosi (collectively "plaintiffs") are New York

residents who purchased and consumed products manufactured and sold by Ungar's Food

Products, Inc. d/b/a Dr. Praeger's Sensible Foods ("Defendants").  Compl. at ¶¶ 9-13.

Defendants are New Jersey residents who manufacture and sell frozen food products.  Id.

Among the plaintiffs, they purchased and consumed Dr. Praeger's Veggie Burgers and Dr.

Praeger's Vegetable Pancakes.  Id. at ¶ 4.  Plaintiffs contend that independent testing and analysis

show that the following statements in the nutritional facts box on the packaging of Defendants'

products are false in the following way:

> 1) Plaintiffs claim that Dr. Praeger's Veggie Burgers states that the products
> contain 4 grams of fat and 92 calories per serving, when in fact, Dr. Praeger's
> Veggie Burgers contain nearly 9 grams of fat and almost 160 calories per serving.

> 2) Plaintiffs claim that Dr. Praeger's Broccoli Pancakes states that the product
> contains 2 grams of fat and 40 calories per serving, when in fact,  Dr. Praeger's
> Broccoli Pancakes contain nearly 4 grams of fat and more than 60 calories per
> serving.

> 3) Plaintiffs claim that Dr. Praeger's Potato Pancakes states that the product
> contains 2.5 grams of fat and 50 calories per serving, when in fact, Dr. Praeger's
> Potato Pancakes contain nearly 5 grams of fact and almost 80 calories per serving

> 4) Plaintiffs claim that  Dr. Praeger's Spinach Pancakes states that the product
> contains 2 grams of fat and 40 calories per serving, when in fact, Dr. Praeger's
> Spinach Pancakes contain more than 4 grams of fat and more than 60 calories per
> serving.

Compl. at ¶¶ 2-5.

Based on these allegations, on May 30, 2006, plaintiffs filed a class action Complaint and filed an Amended Complaint on August 25, 2006, alleging subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). The Amended Complaint asserts claims under the NJCFA and for breach of warranty and negligent misrepresentation. On May 16, 2007, plaintiffs filed this motion for class certification. Defendants filed their opposition on July 11, 2007 and plaintiffs filed its reply on July 13, 2007. The motion was referred to the Undersigned on August 7, 2007. See Docket No. 44.

## III. SUMMARY OF ARGUMENTS

Plaintiffs assert that they meet the requirements of Rule 23 and their motion for class certification should be granted. As to Rule 23(a), plaintiffs argue that: (1) the proposed class is so numerous that joinder of all its members is impractical because it includes as many as tens of thousands of members; (2) common questions of law and fact exist, including whether or not defendants misstated the fat and caloric content of its products; (3) plaintiffs' claims are typical of the claims of the class because their claims and those of the class members are based on the same alleged misstatements, and (4) plaintiffs and their counsel will fairly and adequately represent the class.

As to Rule 23(b), plaintiffs assert that they meet Rule 23(b)(3)'s requirements of predominance and superiority. Plaintiffs assert that New Jersey law applies to their claims and common questions of law and fact predominate over any individual questions affecting individual class members. Plaintiffs further assert that class adjudication is superior to any alternate method of adjudication because, without class adjudication, the relatively small

3

damages suffered by each individual in the class would inhibit the individual from separately seeking redress and that class adjudication presents fewer management difficulties than separate actions.

In opposition, defendants argue that plaintiffs lack standing as to two of the five products because plaintiffs did not purchase the two products.  Furthermore, while defendants do not dispute that plaintiffs meet the commonality and numerosity requirements of Rule 23(a), they argue that plaintiffs do not satisfy the typicality requirement because plaintiffs have not consumed all of the aforementioned products and each has different reasons for purchasing the products.  Defendants also maintain that plaintiffs' counsel cannot fairly and adequately represent the interests of the class because of the alleged close personal relationships that members of the law firm have with the named plaintiffs.

In addition, defendants assert that plaintiffs cannot satisfy Rule 23(b)(3)'s requirement of predominance because there are individual issues concerning: (1) the causal nexus between the alleged representations and plaintiffs' loss under the NJCFA; and (2) reliance that must be proven to establish a claim for misrepresentation.  Furthermore, defendants state that plaintiffs have the burden of showing that each class member would not have purchased the product "but for" the fat and caloric values on the labels and must therefore demonstrate that each class member actually read the label and purchased the product as a result of that information.  The defendants contend that plaintiffs cannot prove this on a class wide basis.  Defendants also argue that conflicting state laws apply to the claims of individual members of the proposed nationwide class and that such conflicts preclude granting class certification.  Finally, defendants assert that because the Amended Complaint expressly excludes all claims for personal injury, res judicata

would preclude potential plaintiffs who would want to recover for such injuries from obtaining such relief and thus these potential plaintiffs have an interest that differs from the named plaintiffs.

## IV.  DISCUSSION

A. <u>Class Certification Standard</u>

Under Federal Rule of Civil Procedure 23, a party seeking class certification must satisfy the following four factors:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  <u>See</u> <u>Cannon v. Cherry Hill Toyota Inc.</u>, 184 F.R.D. 540, 543 (D.N.J. 1999).  These factors are "prerequisites for maintaining any class action in terms of the numerousness of the class making joinder of the members impracticable, the existence of common questions to the class, and the desired qualifications of the representative parties."  Fed. R. Civ. P. 23, Advisory Committee Notes, 1966.  In addition, the putative class representatives must demonstrate that the case falls within one of the categories set forth in Rule 23(b).  Here, plaintiffs assert that this case presents "questions of law and fact common to members of the class [that] predominate over any questions affecting only individual class members and that a class action is superior to other methods for the fair and efficient adjudication pf the controversy." Fed. R. Civ. P. 23(b)(3).  These are know as the "predominance" and "superiority"

5

factors under Rule 23(b).  Cannon, 184 F.R.D. at 545.  To obtain certification in this case, plaintiffs therefore must prove all of the factors of Rule 23(a) and satisfy the prerequisites in Rule 23(b)(3).[1]  Id.  The Court now addresses each of the class certification factors.

B. Rule 23(a) Factors

    **1.**    **Numerosity**

The Court must first consider whether the class is so numerous that joinder of all members is impracticable.  To be certified, a class must be large enough in number to ensure that, for efficiency purposes, a class does not subject the defendants to multiple, similar lawsuits. See In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 309 (3d Cir. 1998) ("In re Prudential") (holding that a proposed class of 8 million past and present policyholders satisfies the numerosity requirement); see also In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 462 (E.D. Pa. 2000) (determining that, because there were thousands of participants in the plan in any given year, joinder of claims would be infeasible and thus satisfying the numerosity requirement); Varacallo, 226 F.R.D. at 229-30 (noting numbers in the hundreds will be impracticable).  The numerosity "requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient."  Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 116 (D.N.J. 2003).  While no minimum number of plaintiffs is required, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  Thus, to determine if numerosity is satisfied, a court should "consider the estimated

---

[1] In borderline line cases, however, courts are reminded to err on the side of granting class certification.  Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 229 (D.N.J. 2005).

number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." Cannon, 184 F.R.D. at 543 (citations omitted).

Here, plaintiffs' proposed class includes "all consumers throughout the United States who have purchased Dr. Praeger's Veggie Burgers and/or Dr. Praeger's Vegetable Pancakes during the Class Period. The Class Period is the period from the first date that Ungar's and/or Sensible Foods sold Dr. Praeger's Veggie Burgers and/or Dr. Praeger's Vegetable Pancakes through the date that the Court certifies this suit as a class action." Compl. at ¶ 15. Plaintiffs contend that during the six years preceding the filing of this lawsuit, the defendants sold more than eight million packages of three of the five products at issue, and thus the potential class includes at least tens of thousands of members. Pls. Br. at 10. Although defendants object to the class as being overly broad, defendants do not dispute that the proposed class is sufficiently numerous. Since the proposed class will include tens of thousands of people and joinder of this number of plaintiffs would be impractical, the Court finds that the numerosity requirement is satisfied.

### 2.     Commonality

Second, the Court must consider whether there are questions of law or fact shared among the named plaintiffs and all members of the class. Numerosity and commonality are both used to evaluate the sufficiency of the class itself. See Hassine v. Jeffes, 846 F.2d 169, 176 n.4 (3d Cir. 1988). For a class to satisfy the commonality requirement, "the named plaintiffs [must] share at least one question of fact or law with the grievances of the prospective class." In re Prudential, 148 F.3d at 310 (citing Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). Though identical claims ease satisfaction of this requirement, "factual differences among the claims of the putative

class members do not defeat certification." Id. (citations omitted).  Thus, it is usually relatively simple to satisfy this requirement.  Ikon, 191 F.R.D. at 463 (citing Baby Neal, 43 F.3d at 56).

Again, although defendants argue that class adjudication of this case is unmanageable and there are different laws that apply to each plaintiff's claim, they concede that there are issues common to all class members.  Indeed, the gravamen of plaintiffs' claims are that defendants misstated fat and caloric content on the packaging of five of defendants' products.  This is a common factual contention.  Thus, resolution of the proposed class' claim will require a determination of whether or not defendants made false statements about the calories and fat in the five products.  As such, the claims involve common factual questions.  Moreover, as will be discussed in the section of this opinion addressing predominance, the class members also have common legal claims under the NJCFA and for breach of express warranty.  Thus, the commonality requirement is satisfied.

### 3.      Typicality

Third, the Court must determine whether the claims of the representative parties are typical of the claims of the class.[2]  Specifically, "[t]ypicality lies where there is a strong similarity of legal theories or where the claims of the class representative and the class members arise from the same alleged course of conduct by the defendant."  In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 518 (D.N.J. 1997) (citations omitted).  This factor is also considered to ascertain "whether the action can be efficiently maintained as a class and whether

_____

[2]Courts also consider whether there are typical defenses asserted when evaluating the typicality factor, Georgine v. Amchem Products, Inc., 83 F.3d 610, 628 (3d Cir. 1996), aff'd, Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997), but here no party has identified any atypical defenses.

8

the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal, 43 F.3d at 57.  Like the commonality requirement, however, all putative class members need not share identical claims. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531-32 (3d Cir. 2004) ("In re Warfarin") (quoting Fed. R. Civ. P. 23(a)(3)); In re Prudential, 148 F.3d at 311 (quoting Baby Neal, 43 F.3d at 56).  Indeed, a finding of typicality necessitates simply that there is "a strong similarity of legal theories, or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." In re Prudential, 962 F. Supp. at 518; see also Cannon, 184 F.R.D. at 544 (stating that claims are typical if they arise from the same cause or conduct and are based on the same legal theory).  Thus, this requirement is satisfied regardless of factual differences as long as the same unlawful conduct was directed at or affected both the named plaintiffs and the absent class members.  Cannon, 184 F.R.D. at 544.

Here, defendants contend that the representative plaintiffs claims are not typical of the potential class claims because none of the named plaintiffs purchased two of the five products identified in the Amended Complaint, namely Tex-Mex Veggie Burgers and Potato Pancakes. Defts. Br. at 1.  While it is true that the Amended Complaint includes allegations about products that named plaintiffs did not purchase or consume, the proposed class claims with respect to these two products are identical to the claims made with respect to the products the named plaintiffs purchased.  As stated earlier, a finding of typicality necessitates simply that there is "a strong similarity of legal theories, or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." In re Prudential, 962 F. Supp. at 518; see also Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998)

(explaining that a plaintiff who is a participant in an ERISA plan has standing to represent a class of participants in plans other than his own if the gravamen of the plaintiff's challenge is to the general practices that affect all of the plans).  In this case, all of the claims involve allegations that defendants made misrepresentations on their packages concerning fat and calories in the product.  Thus, the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality.  Rather, all of the claims and allegations involve an evaluation of the product's representations regarding fat and calories, and arise from an alleged course of conduct in selling a product with false nutritional information.  The fact that a class member may have a claim concerning a product that no named plaintiff purchased "does not detract from [their] ability to fairly represent the interests of the absent class members" because they would assert that such products suffer from the identical false representations.  Cannon, 184 F.R.D. at 544. Accordingly, the named plaintiffs' claims are typical of the proposed class' claims and they have standing to pursue them.

### 4.    Adequacy

Fourth, the Court must find that the representative parties will "fairly and adequately protect the interests of the class."  In re Warfarin, 391 F.3d at 532 (quoting Fed. Civ. P. 23(a)(4)).  The Rule 23 adequacy inquiry "has two components designed to ensure that absentee's interests are fully pursued."  Id. (quoting Georgine, 83 F.3d at 630).  First, when evaluating adequacy, emphasis is placed on determining whether the named plaintiffs' counsel will adequately represent the class.  In re Warfarin, 391 F.3d at 532; In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995) ("In re General

Motors"). To this end, courts consider whether plaintiff's attorney is qualified, experienced, and able to conduct the litigation. In re Prudential, 148 F.3d at 312 (quoting In re General Motors, 55 F.3d at 800). Second, courts must evaluate "conflicts of interest between named parties and the class they seek to represent." In re Warfarin, 391 F.3d at 532; In re Prudential, 148 F.3d at 312 (quoting Amchem, 521 U.S. at 625). As to the adequacy of the named plaintiffs to represent the class, the court must determine if there is "'antagonism between [named plaintiffs'] objectives and the objectives of the [class], [which constitutes] a 'legally cognizable conflict of interest' between the two groups." In re Ins. Brokerage Antitrust Litigation, Civ. No. 04-5184, 2007 WL 542227, *15 (D.N.J. Feb. 16, 2007) (quoting Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006)). A conflict will not be sufficient to defeat a class action "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit." Id. (quoting In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D.Pa. 1999)(internal quotation marks omitted)).

Here, defendants do not contest that plaintiffs' counsel has the experience and resources to represent the class. Rather, defendants contend that the counsel will not fairly and adequately protect the class' interest because there is an inappropriate relationship between the named plaintiffs and class counsel. Specifically, defendants claim that plaintiffs' counsel is the catalyst for this lawsuit because each of the named plaintiffs became involved in the case only at the suggestion of a relative or friend employed by counsel's firm. Among other things, defendants allege that Plaintiff Scher's mother is a partner at counsel's firm and that each of the other named plaintiffs were referred to plaintiffs' counsel by friends and/or family employed by the firm. Defendants maintain that such close personal relationships between the proposed class

11

representatives and proposed class counsel interfere with plaintiffs' counsel's ability to fairly and adequately represent the entire class.

Defendants fails to specify how such personal relationships would interfere with plaintiffs' counsel's ability to represent the proposed class nor have they shown that these relationships violate the Rules of Professional Conduct, interfere with counsel's obligation to equally represent the entire class, or results in a benefit not equally available to all class members. See Lewis v. Goldsmith, 95 F.R.D. 15, 20 (D.N.J. 1982) (stating that the fact that plaintiff is the nephew of his counsel, alone, is insufficient to disqualify plaintiff as a representative plaintiff). While the Court of Appeals in Kramer v. Scientific Control Corp., 534 F.2d 1085, 1090-93 (3d Cir. 1976), found it is improper for a lawyer to represent a class in which his partner is a named plaintiff, the appellate court so held because the particular plaintiff stood to receive money in the form of a share of the fees beyond what he could receive as a class member. There is nothing before the Court to suggest that any named plaintiffs here stand to benefit from any attorney fees that may be awarded to their counsel. In fact, none of the named plaintiffs are partners of the law firm or even employees of the firm. See Stephenson v. Bell Atlantic Corp., 177 F.R.D. 279, 286 (D.N.J. 1997). Moreover, this case involves even less of a concern than that presented in Stephenson, where the court concluded that a plaintiff who was an employee of her counsel's firm did not cause the firm to have a conflict that warranted a denial of class certification because there was no evidence that plaintiff would benefit from any attorneys fees that may eventually be awarded to her counsel. Id. Thus, the existence of a relationship between the named plaintiffs and members of counsel's firm, in the absence of proof that the named plaintiffs would receive a benefit not available to other class members, is not a basis to

find that the law firm cannot adequately represent the class.

Second, there is no evidence of "antagonism" between the named plaintiffs and the class members. The named plaintiffs are asserting common claims concerning products the class members purchased. Other than perhaps purchasing different quantities or flavors of defendants' products, all potential plaintiffs stand in the same shoes. The named plaintiffs' decision to forego personal injury claims does not mean that their interests and those of potential class members are legally at odds. The class can be structured to permit those wishing to pursue personal injury claims to opt out and hence no potential plaintiff who wants to seek relief for that sort of injury will be precluded from doing so. Thus, since plaintiffs and the class members share factual allegations and seek similar remedies, the named plaintiffs satisfy the adequacy requirement of Rule 23(a).

For all of these reasons, the plaintiffs have satisfied the Rule 23(a) factors.

## C. Rule 23(b)(3) Factors

To obtain class certification, the Court must also find that one of the conditions set forth in Rule 23(b) are met. Here, plaintiffs contend that they satisfy the components of Rule 23(b)(3). Rule 23(b)(3) states:

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b). Put succinctly, Rule 23(b)(3) provides that a class action may be

maintained if a court finds that common questions of law or fact predominate over questions affecting only individual class members and the class action is the superior method for the fair and efficient adjudication of the matter.  See Dal Ponte v. American Mortg. Exp. Corp., Civ. No. 04-2152,  2006 WL 2403982, *4 (D.N.J. Aug. 17, 2006); Cannon, 184 F.R.D. at 545.  The Court will examine each of the claims for which certification is requested to determine if the predominance requirement is satisfied.

### 1.      Predominance

To determine whether common issues predominate over questions affecting only individual members, the Court must look at each claim upon which plaintiffs seek recovery and identify the law that applies to the claim.  See Dal Ponte, 2006 WL 2403982, at 5; Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 120 -21 (D.N.J. 2003).  Once the court identifies the applicable law, it must determine whether proving the elements of the plaintiff's claim can be done through common questions or whether the proof will be overwhelmed with individual issues.  Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 210 (E.D.Pa. 2000).  While the "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate," In re Ins. Brokerage Antitrust Litig., 2007 WL 542227, at 15 (quoting Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985)), the predominance requirement demands that the issues in the class action be applicable to the class as a whole and subject to generalized proof. See Szczubelek, 215 F.R.D. at 120 (citing Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th Cir. 1989)).

### a.      Choice of Law Analysis

Plaintiffs are seeking relief based upon two state statutes and one state common law

14

theory: the NJCFA, breach of express warranty, and negligent misrepresentation.  Plaintiffs

contend New Jersey law applies.  Defendants, however, assert that the laws of the fifty states may

apply and the differences in proof under each state law bars class certification.

To determine which state law applies, courts apply the forum state's choice of law rules.

Shields v. Consolidated Rail Corp., 810 F.2d 397, 399 (3d Cir. 1987).  New Jersey has adopted

the "governmental-interest" choice of law analysis, which provides that "the determinative law is

that of the state with the greatest interest in governing the particular issue."  Veazey v. Doremus,

103 N.J. 244, 247-49 (1986); see, e.g., White v. Smith, 398 F. Supp. 130, 133-34 (D.N.J. 1975).

The first step is to determine whether a conflict exists between the law of the interested states.

See Veazey, 103 N.J. at 248.  Any such conflict is to be determined on an issue-by-issue basis.

See, e.g., White, 398 F. Supp. at 134.  If a conflict does not exist, then the court is to apply the

law of the forum state.  See, e.g., In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997).  If a

conflict exists, then the court must "identify the governmental policies underlying the law of each

state and how those policies are affected by each state's contacts to the litigation and to the

parties."[3]  Veazey, 103 N.J. at 248; accord Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32

(3d Cir. 1975).  As the Honorable Joseph E. Irenas observed, "[w]hether the policy that underlies

the law of a state gives rise to a governmental interest calling for the application of that state's

law depends on the nature of the contacts that the state has to the litigation and to the parties."

Dal Ponte, 2006 WL 2403982, at 6 (quoting Gantes v. Kason, 145 N.J. 478, 487 (1996)) (internal

quotation marks omitted).

---

[3]If a state's contacts are not related to the policies underlying its law, then that state does
not possess an interest in having its law apply.  See Pfau v. Trent Aluminum Co., 55 N.J. 511,
521-22 (1970); Mellk v. Sarahson, 49 N.J. 226, 230 (1967).

Thus, in performing the governmental-interest analysis in tort actions, which include consumer fraud cases, see Holmin v. TRW, Inc., 330 N.J. Super. 30, 35 (App. Div. 2000), courts generally consider the place of injury, where the conduct causing injury occurred, the domicile, residence, place of incorporation, and place of business of the parties, and where the relationship between the parties is centered.  Int'l Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc., 384 N.J.Super. 275, 294-95 (App. Div. 2006) (citing Restatement (Second) Conflict of Laws § 145 (1971)).  Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply.  See Henry, 508 F.2d at 32; White, 398 F. Supp. at 134.

### i.       NJCFA-Choice of Law

The first question is whether the NJCFA is in conflict with consumer fraud laws of other states.  Defendant asserts, and plaintiff seems to concede, that a conflict exists among the laws of interested states.  Defts. Br. at 35; Pls. Br. at 13-15; Pls. Reply Br at 5.  Courts have also recognized a conflict between the NJCFA and its counterparts in other states.  See Dal Ponte, 2006 WL 2403982, at 5; International Union, 384 N.J. Super. at 293-94 (observing that a trial court's holding that there are sufficient variations between the laws of the varying states and New Jersey's Fraud Act to constitute an actual conflict is "eminently correct");[4] Fink v. Ricoh Corp.,

---

[4]International Union summarized some of the key conflicts between the NJCFA and various state counterparts as follows:

> New Jersey allows and often encourages private class actions for consumer fraud while several other states prohibit private class action consumer fraud suits.  E.g., *Miss. Code Ann.* § 75-24-15(4); *S.C. Code Ann.* § 39-5-140(a);  *Ala. Code* § 8-19-10(f). NJ law finds actionable fraud in connection with the sale of goods or services for

365 N.J. Super. 520, 584 (L. Div. 2003).  This Court is satisfied that a conflict exists between the NJCFA and other state consumer fraud laws.

The Court now considers whether New Jersey is the state with the most significant relationship with the parties and events of this litigation, and thus maintains the greatest interest in having its law govern the consumer fraud claim.  See Dal Ponte, 2006 WL 2403982, at *5.  New Jersey is the location of defendants' place of business, where it maintains its headquarter offices, plans its product development, advertising, promotion, and marketing strategies, and the state where it manufactures and ships its products.  Certification of Jeffery Cohen dated June 22, 2007 ("Cohen Cert.") at Ex.1-3,5-10,12-34, 36, 37, 39; see also Defts. Br. at 3; Pls. Reply Br. at 5.  Thus, all of the products and the statements about them were conceived in and emanated from New Jersey.  Furthermore, as the source of the allegedly false statements are New Jersey residents, New Jersey has a strong interest in deterring fraudulent conduct by its domestic businesses and compensating consumers who are victims of such fraud, including consumers outside New Jersey.  See Dal Ponte, 2006 WL 2403982, at 7; see also International Union, 384 N.J. Super. at 294-97.

---

commercial or business uses, whereas some states "confine their consumer fraud statute remedies to items purchased 'primarily for personal, family or household purposes.'" Fink, supra, 365 N.J. Super. at 572, 839 A.2d 942 (citing Mo. Ann. Stat. § 407.025(1); 73 P.S. § 201-9.2; Miss. Code Ann. § 75-24-15(4)).  Some states require proof that the defendant willfully or knowingly made false representations "with specific intent to deceive," while New Jersey does not require such a showing. Fink, supra, 365 N.J. Super. at 576, 839 A.2d 942.  Furthermore, variations exist in the award of damages, especially the decision or ability of a court to award punitive or treble damages.

384 N.J. Super. at 294.

New Jersey's interest in protecting consumers is evidenced by its comprehensive consumer fraud law.  In fact, "[t]he available legislative history demonstrates that the NJCFA was intended to be one of the strongest consumer protection laws in the nation."  See Dal Ponte, 2006 WL 2403982, at 6 (citing New Mea Construction Corp. v. Harper, 203 N.J. Super. 486, 497 (App. Div. 1985)).  Furthermore, both of the cases on which Defendants rely, Merck and Fink, concluded that the NJCFA generally provides a higher level of protection for consumer-plaintiffs through measures that make it easier for consumer-plaintiffs to recover in lawsuits against businesses engaging in fraudulent practices, and thus members of the proposed class residing in other states will generally be afforded no less protection under the NJCFA than their home state, and, in fact, may receive greater protection.  See Dal Ponte, 2006 WL 2403982, at 7; see also International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Civ. No.  ATL-L-3015-03, 2005 WL 2205341, *20 (L. Div. July 29, 2005); Fink, 365 N.J. Super. at 570-74.  As a result, the application of NJCFA does not trample upon other states' interest in protecting their consumers from fraud.

The Court "concludes that New Jersey has the strongest interest in applying its consumer fraud statute," Dal Ponte, 2006 WL 2403982, at 7, as defendants have sufficient contacts with New Jersey, the essence of this cause of action emanates from New Jersey, and New Jersey's policy of deterring fraudulent conduct by domestic businesses and compensating consumers who are victims of fraud by such businesses is significantly implicated by this litigation.  Therefore, the Court will apply the NJCFA to all members of the class, including those who reside in states other than New Jersey. _____

**ii.  NJCFA-Predominance of Common Issues**

The Court must next examine the NJCFA to determine if common questions predominate over issues unique to individual class members. See Dal Ponte, 2006 WL 2403982, at 8. To this end, the Court must examine the elements of the cause of action to determine if plaintiffs' NJCFA claim can be proven through common questions or whether the proof will be overwhelmed with individual issues. See Lyon, 194 F.R.D. at 210. To state a claim under the NJCFA based on an affirmative misrepresentation,[5] a private plaintiff must show: (1) defendant engaged in deception, fraud, false pretense, false promise, or misrepresentation; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the loss. N.J.S.A. 56:8-2; Strzakowlski v. General Motors Corp., Civ. No. 04-4740, 2005 WL 2001912, *4 (D.N.J. Aug. 16, 2005); Szczubelek, 215 F.R.D. at 121 (citing Weinberg v. Sprint Corp., 173 N.J. 233, 236-37 (2002)). As to the first element, plaintiffs need not prove intent to defraud, or that the plaintiff detrimentally relied on the representations. See Dal Ponte, 2006 WL 2403982, at 8 (discussing the NJFCA and stating "[the] one individual issue causing great problems for certification proponents in cases based upon misrepresentation is not present here-reliance" and citing Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 43 (App. Div. 2000) for the proposition that NJCFA plaintiffs need not demonstrate reliance on the misrepresentations of defendants); see also Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605-08 (1997) (plaintiff need not prove intent to defraud or detrimental reliance upon affirmative misrepresentation under

---

[5]Where the alleged consumer fraud violation involves an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Delaney v. American Express Co., Civ. No. 06-5134, 2007 WL 1420766, *7 (D.N.J. May 11, 2007) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-18 (1994)). To support an allegation of consumer fraud based on an omission, however, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Id.

NJCFA); <u>International Union</u>, 384 N.J. Super. at 288-89 (stating "it is not necessary to prove that

each class member specifically relied upon Defendant's misrepresentations").

      With respect to the second element, namely "ascertainable loss," this includes more than

a monetary loss and may occur "when a consumer receives less than what was promised." <u>See</u>

<u>Solo v. Bed Bath & Beyond, Inc.</u>, Civ. No. 06-1908, 2007 WL 1237825, *3 (D.N.J. April 26,

2007)[6] (quoting <u>Theidemann v. Mercedes-Benz, USA LLC,</u> 183 N.J. 234, 249 (2005); <u>see</u> <u>also</u>

<u>Miller v. Am. Family Publishers</u>, 284 N.J.Super. 67, 90-91 (Ch. Div. 1995) (stating "[f]or their

money, they received something less than and different from what they reasonably expected in

view of defendant's presentations.  This is all that is required to establish ascertainable loss.").

Finally, the causal nexus element requires proof that "the prohibited act must in fact have misled,

deceived, induced or persuaded the plaintiff to purchase defendant's product or service." <u>Fink</u>,

365 N.J. Super. at 574.  Where the representations are in written and uniform materials presented

to each prospective plaintiff, there is a presumption of causation in NJCFA cases.  <u>See</u> <u>Hannan v.</u>

<u>Weichert South Jersey, Inc.</u>, Civ. No. SL-000396-06, 2007 WL 1468643, *10 (App. Div. May

22, 2007) (explaining "[w]e are convinced that <u>Varacallo</u>, . . . which articulated a presumption or

inference of reliance and causation in CFA class action cases, is distinguishable from this case,

because misrepresentations in that case were contained in written and uniform materials

---

    [6]<u>See</u> <u>also</u> <u>Talalai v. Cooper Tire & Rubber Co.</u>, 360 N.J. Super. 547, 564 (L. Div. 2001)
(stating "[w]henever a consumer has received something other than what he bargained for, he has
suffered a loss of money or property.  That loss is ascertainable if it is measurable even though
the precise amount of the loss is not known . . . . When the product fails to measure up to
reasonable expectations based on the representations made, the consumer has been injured; he
has suffered a loss.").  In cases involving alleged misrepresentations, as here, "either out-of-
pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle."
<u>Theidemann,</u>183 N.J. at 248.

presented to each prospective purchaser.").

 Here, plaintiffs allege the defendants misrepresented the fat and caloric contents of the products and that these statements occurred in connection with defendants' business.  Compl. ¶¶ 2-6.  Plaintiffs further allege they purchased and consumed defendants' products that were in packages with the false information on them.  Id. at ¶¶ 9-12.  The plaintiffs contend that they suffered an ascertainable loss up to the money they spent on the products.  As stated above, to satisfy the ascertainable loss element of the NJCFA, plaintiffs need only prove that they paid for a product and "got something less than what had been promised."  See International Union, 384 N.J. Super. at 291; Strzakowlski, 2005 WL 2001912, at *7.  Here, the focus is on what the defendants said on their packages and whether the product is different from what was promised.  As to the causal nexus, the alleged promises were all embodied on defendants' packages and are limited to the statements about the fat and caloric content of five food products.  Therefore, the statements to each purchaser are finite and identical.  Here, like Varacallo, there are allegations that uniform statements regarding fat and calories were made to all customers that were misleading and reasonably could be said to have made a difference in a decision to purchase the product, Hannan, 2007 WL 148643, at 13, and so it would be appropriate to presume there is a connection between the statements and the purchase of a product different from that which was promised.  See Hannan, 2007 WL 1468643, at 10.  Because there is nothing before the Court to suggest plaintiffs are utilizing "a price inflation theory" or market theory of damages, see Fink, 365 N.J. Super. at 546,  the plaintiff need not show that "that **each** class member would not have purchased the product 'but for' the fat and caloric values on the **label**," and nor must plaintiffs "demonstrate that each class member read the label and purchased the product as a result of that

information."  Defts. Br. 25 (emphasis in the original).

In short, the plaintiffs "identif[ed] a small core of misrepresentations . . . made to all, or most, of the class members" <u>Stephenson</u>, 177 F.R.D. at 291, and the representations are likely to have made a difference in the decision to purchase a product that was different from what was promised.  These facts will be established via common proof and will not present individual issues.  Thus, the predominance requirement for the plaintiffs' NJCFA claim is satisfied.

### iii.  Breach Of Express Warranty-Choice Of Law

The Court must next examine the breach of warranty claim to determine whether or not New Jersey choice of law dictates application of New Jersey law and if so, whether there are questions common to all class members regarding such a claim.  Other than defendants citing <u>Sanders v. Johnson & Johnson, Inc.</u>, Civ. No. 03-2663, 2006 U.S. Dist. Lexis 35881, *15-16 (D.N.J. May 31, 2006) for the proposition that "states differ on their requirements for establishing a breach of warranty claim," no party has identified any specific conflicts between New Jersey law and any other state's breach of an express warranty law.  Defendants' mere reference to <u>Sanders</u>, however, is insufficient to "point out or establish any difference in the laws of the various jurisdictions involved in a particular case," and, as such, it is proper for this Court to apply the law of the forum. See <u>Dal Ponte</u>, 2006 WL 2403982, at 5 (citing <u>Boyes v. Greenwich Boat Works</u>, 27 F. Supp. 2d 543, 547 (D.N.J. 1998) and stating "[w]here the parties fail to point out or establish any difference in the laws of the various jurisdictions involved in a particular case, it is proper for the court to apply the law of the forum.").  Moreover, <u>Sanders</u>, is inapposite.  First, the plaintiff in <u>Sanders</u> conceded that New Jersey law would not apply to all members of the proposed class and instead asserted that the laws of the fifty states were sufficiently similar to

22

satisfy the predominance requirement, whereas here, plaintiffs assert that New Jersey law applies to all class members under New Jersey's choice of law-governmental interest analysis.  Second, the court in <u>Sanders</u> discussed differences in state law as it related to the plaintiff's breach of <u>implied</u> warranty claim, and made no reference to any conflicts amongst states as to a breach of an <u>express</u> warranty claim.  Finally, even assuming that conflicts of law exist, the governmental interest analysis discussed previously supports the application of New Jersey common law here. <u>See</u> <u>Dal Ponte</u>, 2006 WL 2403982, at 5.  A New Jersey business made a promise emanating from New Jersey.  An express warranty embodies a promise and New Jersey has an interest in ensuring its businesses live up to their promises to consumers and provide a remedy if the promise is broken.  As such, this Court concludes that New Jersey law applies to plaintiffs' breach of express warranty claims.  The Court must next determine whether the elements of the cause of action for breach of express warranty can be proven through common questions or if individualized issues predominate.

### iv.  Breach of Express Warranty-Predominance

Express warranty claims are governed by New Jersey's version of the Uniform Commercial Code-Sales.  <u>See</u> <u>Arons v. Rite Aid Corp.</u>, Civ. No. BER-L-4641-03,  2005 WL 975462, *9 (L. Div. 2005) (citing  N.J.S.A. 12A:2-101 <u>et. seq.</u> ("UCC")).  An "express warranty" is:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the
> bargain creates an express warranty that the whole of the goods
> shall conform to the sample or model.

N.J.S.A. 12A:2-313(1).  The UCC makes clear that an express warranty is created when a seller

makes a promise to a buyer related to a good or promises that a good will conform to a specific

description.  See Arons, 2005 WL 975462, at 10.  The UCC, however, does not require the use of

formal words of promise or that the seller have a specific intention to warrant the good but rather

that the substance of the offer to sell contains a promise of conformity as described above.[7]  Id. at

9. (citing N.J.S.A. 12A:2-313(2)).  A representation is presumed to be part of the basis of the

bargain "'once the buyer has become aware of the affirmation of fact or promise.'"  Viking Yacht

Co. v. Composites One LLC, Civ. No. 05-538, 2007 WL 2153243, *5 (D.N.J. July 26, 2007)

(quoting  Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 825 (3d Cir. 1999));

see also Cipollone v. Liggett Group, Inc., 893 F.2d 541, 568 (3d Cir. 1990), rev'd on other

grounds, 505 U.S. 504 (1992) (stating that "once the buyer has become aware of the affirmation

of fact or promise, the statements are presumed to be part of the 'basis of the bargain' unless the

defendant, by 'clear affirmative proof,' shows that the buyer knew that the affirmation of fact or

promise was untrue.").  To establish a breach of an express warranty under N.J.S.A.12A:2-101,

the plaintiff need not prove privity or traditional reliance.  Arons, 2005 WL 975462, at 22-23; see

---

[7]The policy behind a warranty should also be taken into consideration when determining
whether a warranty exists.  Generally, the seller knows more about the good and is better able to
absorb any loss resulting from a dangerous condition relating to the good than the buyer. See
Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 446-47 (N.J. 1965) (stating
"[w]arranties of fitness are regarded by law as an incident of transaction because one party to the
relationship is in a better position than the other to know and control the condition of the chattel
transferred and to distribute the losses that may occur because of a dangerous condition the
chattel possesses.").

also Cipollone, 893 F.2d at 563-66; Bregman Screen & Lumber Co. v. Bechefsky, 16 N.J. Super.
35, 41 (App. Div. 1951) (stating that "[a]s a rule, no proof of the buyer's reliance on the warranty
is necessary other than that the seller's statements were of a kind which naturally would induce
the purchase.  The warranty need not be the sole inducement.").  In addition, plaintiffs need not
give notice of the breach against a manufacturer who was not the immediate seller of the product,
and, in any event, a civil complaint would satisfy any such notice requirement under N.J.S.A. 2-
607(3)(a).  See Strzakowlski, 2005 WL 2001912, at *3; Cipollone v. Ligett Group, Inc., 683
F.Supp. 1487, 1498 (D.N.J. 1988).

　　　Here, the statements on the packages of the five products about fat and caloric content is
the basis of the bargain for a product whose packaging touts it as a heart healthy choice.  Cohen
Cert. Ex. 1.  The descriptions concerning fat and calories were clearly displayed on the package
and should have conformed to the product.  The plaintiffs allege that the descriptions did not
conform with the product because the product contained substantially more calories and fat than
described.  Thus, the expressed promise of lesser calories and fat has been breached.  Because
this express warranty appears to have been breached and since individual reliance need not be
proven,  no individual inquiry is needed to resolve plaintiffs' claim.  Thus, the predominance
factor is satisfied for the breach of warranty claim.[8]

_____

　　　[8]Various cases have denied class certification of claims involving breach of express
warranty claims; See Chin v. Chrysler Corp.,182 F.R.D. 448, 455 (D.N.J. 1998) (denying
certification of breach of express and implied warranty claims due to necessity of applying laws
of 52 jurisdictions and existence of individualized fact questions precluded finding that common
issues of fact and law predominated); In re Ford Motor Co. Ignition Switch Products Liability
Litigation, In re, 174 F.R.D. 332, 351 (D.N.J. 1997) (denying class certification for express and
implied warranty claims because of the substantial variations in state law and the inability to try
individualized issues as a class action);  Abbent v. Eastman Kodak Co., Civ. No. 90-3436, 1992
WL 1472751, *6 (D.N.J. Aug. 28, 1992) (refusing to certify class action that involved 12

**v.  Negligent Misrepresentation-Choice Of Law and Absence of Predominant Facts**

Plaintiffs' third count accuses the defendants of negligent misrepresentation.  Plaintiffs assert that New Jersey law applies to this cause of action.  Even assuming New Jersey law applies, the elements of the claim require individual proof, thereby precluding predominance of class issues.  Under New Jersey law, the elements of a negligent misrepresentation claim are: (1) defendant negligently made a false communications of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury.  Szczubelek, 215 F.R.D. at 126 -127; see H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983); Gross v. Johnson & Johnson-Merck Consumer Pharm.Co., 303 N.J. Super. 336 (App. Div. 1997).  Thus, assuming that New Jersey law does apply to this claim, the elements of a negligent misrepresentation claim are incongruent with granting class certification, as common issues would not predominate because each plaintiff would need to prove reliance.  As the Third Circuit stated, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  Newton v. Merrill Lynch, et., al., 259 F.3d 154, 172 (3d Cir. 2001) (citing Binder v. Gillespie, 184 F.3d 1059, 1063-66 (9th Cir. 1999)).  Plaintiffs' negligent misrepresentation claim would be overwhelmed with individual issues and thus cannot satisfy the requirements of Rule 23(b).  Therefore, the request to certify a class for this claim

---

different causes of action, including breach of express warranty, and explaining "there are many individual issues to be decided on a plaintiff-by-plaintiff basis ").  These cases had more complex factual scenarios and involved numerous state law claims.  Not surprisingly, the governmental interest analysis was not undertaken.  Rather, the courts found that the laws of fifty states would apply and, in one case, plaintiffs even advocated for the application of the laws of many jurisdictions.  See, e.g., Chin, 182 F.R.D. at 456, Ford Motor, 174 F.R.D. at 349-51.  Here, plaintiffs assert only New Jersey law applies and the nature of the claim and warranty at issue is narrow, written and uniform and so the complexities in these cases are not present and the interest in this forum is clear.

must be denied.

Having determined that the predominance requirement is satisfied for the NJCFA and breach of express warranty claims, the Court must next determine if a class action is a superior method to adjudicate these claims.

### 2.    Superiority

Rule 23(b)(3) sets forth four nonexclusive factors to guide the determination of whether a class action is superior to other methods to adjudicate the controversy.  The factors include

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

An application of each factor demonstrates that a class action is a superior method of addressing this dispute.  First, like the named plaintiffs, each individual purchaser would have little interest in pursuing separate claims as the recovery sought by each would not be sufficiently large to render separate cases economically feasible.  Cannon, 184 F.R.D. at 546; Jones v. Commerce Bancorp, Inc., Civ. No. 05-5600,  2007 WL 2085357, *4 (D.N.J. July 16, 2007).  Second, as to the existence of litigation elsewhere, no party has submitted any evidence indicating that there are other cases pending against the defendants.  Third, as to the desirability of concentrating all claims here, efficiency makes it generally "desirable to litigate similar,

27

related claims in one forum." In re Ford Motor Co. Ignition Switch Products Liability Litigation, 174 F.R.D. 332, 351 (D.N.J. 1997). Finally, as to difficulties managing this case, none are expected that would not otherwise be present in any case with numerous but small individual claims. As such, a class action is the superior method for adjudicating plaintiffs' NJCFA and breach of express warranty claims.

## V. CONCLUSION

For all of these reasons, plaintiffs are entitled to class certification for their NJCFA and breach of express warranty claims, but not their negligent misrepresentation claim. Rule 23(c)(4) permits differential treatment of claims. See Fed. R. Civ. P. 23(c)(4)(stating "[w]hen appropriate . . . an action may be brought or maintained as a class with respect to particular issues"). Rule 23(c)(4)(A) recognizes "that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member." Stephenson, 177 F.R.D. at 290 (quoting 7B Charles Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1790, at 271 (2d ed. 1986)). Certification of all asserted causes of action is not an all-or-nothing proposition. Id. Accordingly, the Undersigned recommends that the United States District Judge:

> 1) certify for claims under NJCFA and for breach of express warranty for the following class: All persons in the United States who purchased Dr. Praeger's Frozen California Veggie Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes from May 30, 2000 through August 31, 2007;
>
> (2) deny the motion for class certification on plaintiffs' negligent misrepresentation claim;
>
> (3) allow plaintiffs who seek recovery for personal injuries to opt out of the class;

28

(4 ) appoint plaintiffs Alexandria Elias, Roxanne Scher, Dolores Baez and Jennifer Tosi as class representatives;

(5) appoint Troutman Sanders LLP. as class counsel; and

(6) require that the parties submit a notice to the Court for dissemination to the class no later that 5 days after the Order adopting this Recommendation.

The parties have 10 days to file objections to this Report and Recommendation.

Respectfully submitted,

s/Patty Shwartz
UNITED STATES MAGISTRATE JUDGE

Dated: September 6, 2007

29