# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDRIA ELIAS, ROXANNE SCHER, DOLORES BAEZ and JENNIFER TOSI, on behalf of themselves and others similarly situated, | Civil Action No. 2:06-cv-02448-KSH-PS |
| Plaintiffs, | Hon. Katherine S. Hayden, U.S.D.J. |
| v. | |
| UNGAR'S FOOD PRODUCTS, INC., d/b/a DR. PRAEGER'S SENSIBLE FOODS and SENSIBLE FOODS LLC, d/b/a, DR. PRAGER'S SENSIBLE FOODS, | **FINAL PRETRIAL ORDER** |
| Defendants. | Trial Date: |

The following Final Pretrial Order is hereby entered:

1.   **JURISDICTION** (set forth specifically)

Plaintiffs assert, and Defendants dispute, that this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), in that the putative class asserts claims for damages in excess of $5,000,000.00, exclusive of interest and costs, and any member of the class is a citizen of a state different from any defendant.  Plaintiffs further assert, and Defendants further dispute, that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(l).

Venue of this action in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391, because the Defendants reside, transact business and are found in this District and a substantial portion of the events giving rise to Plaintiffs' claims arose here.

2.  **PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar.  Also set forth the nature of the motion.  If the Court indicated that it would rule on any matter at pretrial, summarize that matter.  Each party's contemplated in limine motions should also be set forth.)

Pending Motion

The parties are awaiting a determination of Defendants' objections to Magistrate Judge Shwartz's September 6, 2007 Report and Recommendation for certification of a class to pursue claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2, and for breach of express warranty under N.J.S.A. 12A:2-101.

Plaintiffs - Motions in Limine

Plaintiffs contemplate a motion to exclude the testimony of Defendants' proposed expert Elizabeth J. Campbell on the grounds that such testimony is not calculated to assist the trier of fact to understand the evidence or determine a fact in issue and is not relevant to the matters at issue in this action.

Plaintiffs contemplate a motion to preclude Defendants from offering any testimony that they performed a calculation of the amount of oil contained in each of the products on the ground that documents containing such calculations have been impermissibly withheld, despite such documents being requested in discovery.

Plaintiffs contemplate a motion to preclude Defendants from offering any testimony from Antonia Demas, on the grounds that such testimony is not calculated to assist the trier of fact to understand the evidence or determine a fact in issue and is not relevant to the matters at issue in this action.

Plaintiffs - Motions for Sanctions

Plaintiffs contemplate a motion to sanction Defendants for their failure to provide documents concerning sales figures for Dr. Praeger's Tex-Mex Veggie Burgers and Dr. Praeger's Potato Pancakes.

Plaintiffs contemplate a motion to sanction Defendants for their failure to provide updated documents concerning sales figures for the products at issue in this action.

Plaintiffs - Motion For Admission *Pro hac vice*

Plaintiffs contemplate a motion to have Eric L. Unis, Esq. admitted *pro hac vice* in this action.

Defendants – Motions for Summary Judgment

The Defendants intend to file the following:

(1)     A motion for partial summary judgment seeking dismissal of Plaintiffs' claims for the California Veggie Burgers and Tex-Mex Veggie Burgers, on the basis of preemption because those products were subject to an FDA supervised recall.

(2)     A motion for partial summary judgment seeking dismissal of Plaintiffs' claims, on the basis of preemption, to the extent they are based on state law requirements "not identical to" the requirements of the Nutrition Labeling and Education Act of 1990 ("NLEA").

(3)     A motion for summary judgment seeking dismissal of Plaintiffs' claims on the basis that Plaintiffs are unable to establish any damages for members of the proposed class.

Defendants – Motions to Dismiss

The Defendants intend to file the following:

(4)     A 12(b)(1) Motion to Dismiss Plaintiffs' claims for lack of subject matter jurisdiction, should the Court deny class certification.

(5)     A 12(b)(6) Motion to Dismiss Plaintiffs' claims related to Defendants' Tex-Mex Veggie Burgers and Potato Pancakes, based upon lack of standing, as Plaintiffs have never purchased these two products.

Defendants – Motions in Limine

The Defendants intend to file, at such time as is directed by the Court, the following Motions in limine:

(1)     To preclude testimony by the Plaintiffs' proposed expert, David A. Levitsky, because he lacks the requite qualifications to offer his expert opinions, and because the studies he relied upon do not in fact support his opinions, and the statistical methodology he used to analyze these studies is neither valid nor scientifically reliable, fails to meet the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 5098 U.S. 579 (1993), and is therefore inadmissible; and to bar reference by any other witnesses to such testimony or opinions.

(2)     To preclude testimony by the Plaintiffs' proposed expert, Joe M. Regenstein because the subject of his opinions (Defendants' knowledge or intent, or the truthfulness of their testimony) is not a proper subject for expert opinion or testimony, and fails to meet the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 5098 U.S. 579 (1993), and is therefore inadmissible; and because he lacks any qualifications to offer such opinions; and to bar reference by any other witnesses to such testimony or opinions.

(3)     To preclude testimony by the Plaintiffs' proposed expert, Katherine W. Barry, because her expert opinions are based solely upon laboratory tests conducted without proper

5

accreditation; and therefore her laboratory's analysis of Defendants' products is neither valid nor scientifically reliable, fails to meet the standard set forth in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 5098 U.S. 579 (1993), and is therefore inadmissible; and to bar reference by any other witnesses to such testimony or opinions.

(3)(b) Precluding experts based on opinion bar. (See Section 7, item 4

(4)    To preclude testimony by the named Plaintiffs, Alexandria Elias, Dolores Baez, Roxanne Scher, and Jennifer Tosi, as to alleged mislabeling of Defendants' products, on the basis that Plaintiffs admit no direct knowledge of whether the products they purchased were actually mislabeled.

(5)    To preclude any testimony and/or reference to any of Defendants' products, which were never purchased by Plaintiffs, including but not limited to, Tex-Mex Veggie Burgers and Potato Pancakes.

(6)    To preclude any testimony and/or reference to events that allegedly occurred prior to May 30, 2000.

(7)    To preclude any testimony and/or reference to any of Defendants' products, which are not properly the subject of this litigation.

(8)    To preclude any testimony and/or reference to any versions of Defendants' products, which were in development and never sold.

(9)    To preclude any testimony and/or reference to the documents bates stamped P0001 - P0051, purportedly showing packaging and nutrition labels for the California Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes, on the basis of lack of authentication.

(10)    To preclude any testimony, or introduction into evidence of any documents, which would constitute inadmissible hearsay and/or which is unduly prejudicial, not relevant,

would cause confusion of the issues, undue delay and waste of time and/or is needlessly cumulative.

(11)    To preclude Plaintiffs from naming any additional experts, or furnishing any additional expert reports.

## Defendants – Motions for Sanctions

The Defendants intend to file a motion for sanctions based upon the spoliation of evidence (Plaintiffs' destruction of the only samples/packaging of Defendants' products that they had laboratory tested, despite their knowledge, evidenced in emails and letters between Plaintiffs' counsel and ABC Research Co., that such samples were subject to the present litigation), which has prejudiced Defendants, and seeking to preclude laboratory test results from ABC Research Co. and any testimony and/or reference thereto. Further, Defendants intend to seek sanctions and preclusion of expert testimony based upon the destruction of draft reports of plaintiffs' experts and communications between plaintiffs' experts and plaintiffs' counsel.

## Defendants – Motion to Bifurcate

The Defendants intend to file a motion to bifurcate or trifurcate, should the Court grant class certification.   Plaintiffs' claims for damages, if any, should be tried separately, following a verdict, if any, on the issue of liability. See Part 10(E), infra.

3.   **STIPULATION OF FACTS** (Set forth in numbered paragraphs all uncontested facts, including all answers to interrogatories and admissions to which the parties agree.)

1.   Defendant Ungar's Food Products, Inc. ("Ungar's) is a New Jersey corporation organized under the laws of the State of New Jersey, with its current principal place of business in Elmwood Park, New Jersey.

2.   Defendant Sensible Foods LLC, d/b/a Dr. Praeger's Sensible Foods ("Sensible Foods") is a New Jersey limited liability corporation organized under the laws of the State of New Jersey, with its current principal place of business in Elmwood Park, New Jersey.

3.   Defendants Ungar's Food Product, Inc. and Sensible Foods LLC (collectively "Defendants"), produce and sell frozen food products in New Jersey and various other states in the United States through retailers and directly to consumers through their website, www.drpraegers.com and have done so throughout the Proposed Class Period.

4.   The directors of Ungar's are Dr. Peter Praeger, Dr. Eric Somberg, and Jeffrey Cohen.

5.   The founding members and principal managers of Sensible Foods are also the principal stockholders, officers and directors of Ungar's.

6.   Ungar's is the operating company responsible for the formulation, manufacture, production, marketing, advertising, testing and/or analysis, distribution and sales of frozen food products. Sensible Foods' primary role is as landlord and owner of the production facility used by Ungar's.

7.   During the Proposed Class Period, Dr. Peter Praeger has been a member of Sensible Foods and a practicing heart surgeon.

8

8.     During the Proposed Class Period, Jeffrey Cohen has been a member of Sensible Foods and the Chief Operating Officer of Ungar's.

9.     During the Proposed Class Period, Lawrence Praeger has been employed by Defendants.

10.    During the Proposed Class Period, Dr. Eric Somberg has been a member of Sensible Foods and a practicing heart surgeon.

11.    During the Proposed Class Period, Defendants have advertised and sold their frozen Dr. Praeger's "California veggie burgers" (hereinafter "California Veggie Burgers").

12.    During the Proposed Class Period, Defendants have advertised and sold their frozen. Praeger's "Tex-Mex veggie burgers" (hereinafter "Tex-Mex Veggie Burgers").

13.    During the Proposed Class Period, Defendants have advertised and sold their frozen Dr. Praeger's broccoli pancakes (hereinafter "Broccoli Pancakes").

14.    During the Proposed Class Period, Defendants have advertised and sold their frozen Dr. Praeger's potato pancakes (hereinafter "Potato Pancakes").

15.    During the Proposed Class Period, Defendants have advertised and sold their frozen Dr. Praeger's spinach pancakes (hereinafter "Spinach Pancakes").

16.    Plaintiffs sued Defendants based on five of Defendants' products: Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, Spinach Pancakes.

17.    Plaintiff Alexandra Elias is a citizen of the State of New York, residing in the County of Nassau.

18.     Plaintiff Roxanne Scher is a citizen of the State of New York, residing in the County of New York.

19.     Plaintiff Dolores Baez is a citizen of the State of New York, residing in the County of Suffolk.

20.     Plaintiff Jennifer Tosi is a citizen of the State of New York, residing in the County of New York.

21.     Plaintiff Elias purchased California Veggie Burgers during the period from March 2006 through May 2006.

22.     Plaintiff Scher purchased California Veggie Burgers and Spinach Pancakes during the period from September 2003 through May 2006.

23.     Plaintiff Scher purchased one box of the California Veggie Burgers (11 oz. package containing four 78 gram servings) and one box of the Spinach Pancakes (12 oz. package containing six 38 gram servings) every week, for two years and nine months, with the exception of a semester spent abroad.

24.     Plaintiff Scher consumed one to two servings of the California Veggie Burgers at a time, and half a box of Spinach Pancakes at a time.

25.     Plaintiff Scher's expenditures on Defendants' products total approximately $1,500.00.

26.     Plaintiff Baez purchased one 60-oz. "Club Size" package of California Veggie Burgers in April 2006.

27.    Plaintiff Tosi purchased Broccoli Pancakes and Spinach Pancakes during the period from 2001 through at least December 14, 2006.

28.    Plaintiff Tosi purchased, on average, approximately one box of Spinach Pancakes or Broccoli Pancakes every month.

29.    Plaintiffs had four of the five products tested: California Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes ("Plaintiffs' tests").

30.    Plaintiffs have not tested the Tex-Mex Veggie Burger.

31.    Plaintiffs' counsel had analytical tests of Defendants' products performed only by ABC Research Corp.

32.    The FDA determined that the recall, which constitutes an informal enforcement action under FDA regulations, would be categorized as a "Class III" recall, indicating "a situation in which there is a strong likelihood the use of, or exposure to, a violative product is not likely to cause adverse health consequences."

33.    On May 10, 2006, Defendants issued a press release advising the public of the recall of the California Veggie Burgers and the Tex-Mex Veggie Burgers.

34.    On May 15, 2006, Defendants sent a Class III recall letter approved by the FDA to some of Defendants' retail customers.

35.    During the Proposed Class Period, the packages of certain of Defendants' products, including the 11 oz. package of California Veggie Burgers, the 60 oz. package of California

Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes, have included a "Dear Valued Customers" statement of Dr. Peter Praeger, reading:

> Dear Valued Customer:
>
> I believe that being healthy is a combination of genetics and a balanced lifestyle, including exercise and eating sensibly. As a Cardiac Surgeon, I am concerned that my patients maintain sensible diet habits as part of their ongoing cardiac care.
>
> Working with the family of a former patient in the food business, I set out to create great foods that are both low in cholesterol and saturated fats and are free of preservatives and artificial ingredients. The result is "Dr. Praeger's Sensible Foods" designed to contain only the freshest ingredients prepared under strict Kosher supervision. Dr. Praeger's Sensible Foods is the perfect combination of taste and convenience for a health conscious lifestyle.

This statement on the packages is accompanied by a photograph of Dr. Praeger wearing a labcoat and a stethoscope.

36.    The packages of each of Defendants' products prominently describe them as "all natural" in large capital lettering every time the product name appears on every one of the packages' six surfaces and state, "you will recognize all the ingredients."

37.    Prior to May 2006, California Veggie Burger and Tex-Mex Veggie Burger packages displayed the American Heart Association seal with the statement "Meets American Heart Association food criteria for saturated fat and cholesterol for healthy people over age 2," once on the front and again on the back of the packages.

38.    During the Proposed Class Period, California Veggie Burgers and Tex-Mex Veggie Burgers were featured by name on the menus of many restaurants and delicatessens.

39.     No laboratory testing of the nutritional content of Defendants' California Veggie Burgers, Tex-Mex Veggie Burgers, Spinach Pancakes, Broccoli Pancakes, or Potato Pancakes was conducted by or on behalf of Defendants until 2006.

40.     Prior to 2002, the listed ingredients for the version of Broccoli Pancakes Defendants produced during this time included: Broccoli, Potatoes, Onions, Eggs, Oat Bran, Canola Oil, Salt, Egg Whites, Fresh Garlic, and Pepper.  (This version is hereinafter referred to as "BP1").  BP1 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for BP1 stated 70 calories and 3 grams of fat per serving.

41.     Starting in about 2002, the listed ingredients for the version of Broccoli Pancakes Defendants produced during this time included: Broccoli, Potatoes, Onions, Egg Whites, Oat Bran, Canola Oil, Salt, Fresh Garlic, and Pepper.  (This version is hereinafter referred to as "BP2").  BP2 replaced the whole eggs listed in the previous version with egg whites.

42.     Starting in about July 2004, the listed ingredients for Broccoli Pancakes produced by Defendants during this time included: Broccoli, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Salt, Garlic, and Pepper.  (This version is hereinafter referred to as "BP3").  BP3 added arrowroot.  BP3 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for BP3 stated 40 calories and 2 grams of fat per serving.

43.     Starting in about November 2005, the listed ingredients for Broccoli Pancakes produced by Defendants during this time included: Broccoli, Potatoes, Onions, Egg Whites, Potato Flakes, Expeller Pressed Canola Oil, Salt, Garlic, Black Pepper.  (This version is hereinafter referred to as "BP4").  BP4 replaced the oat bran listed in the previous version with potato flakes, removed

arrowroot, and was gluten free. BP4 was shipped in packages containing nine 38 g serving size pancakes and the Nutritional Facts label for BP4 stated 40 calories and 2 grams of fat per serving.

44.    Starting in about April 2006, the listed ingredients for Broccoli Pancakes produced by Defendants during this time included: Broccoli, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Salt, Garlic, Pepper and All Natural Vegetable Gum. (This version is hereinafter referred to as "BP5"). BP5 added all natural vegetable gum. BP5 was shipped in packages containing nine 38 gram serving size pancakes.

45.    Starting in about August 2006, the listed ingredients for Broccoli Pancakes produced by Defendants during this time included: Broccoli, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper and All Natural Vegetable Gum. (This version is hereinafter referred to as "BP6"). BP6 added oat fiber. BP6 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for BP6 stated 60 calories and 3.5 grams of fat per serving.

46.    Starting in about April 2007 to the present, the listed ingredients for Broccoli Pancakes produced by Defendants during this time included: Broccoli, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper, and All Natural Vegetable Gum. (This version is hereinafter referred to as "BP7"). BP7 changed the pancake size, package size, and serving size from the previous version. BP7 was shipped in packages containing six 57 gram serving size pancakes and the Nutritional Facts label for BP7 stated 80 calories and 3.5 grams of fat per serving.

47.     Prior to 2002, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potatoes, Onions, Eggs, Oat Bran, Canola Oil, Salt, Egg Whites, Fresh Garlic, and Pepper.  (This version is hereinafter referred to as "SP1").  SP1 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for SP1 stated 70 calories and 3 grams of fat per serving.

48.     Starting in about 2002, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potatoes, Onions, Egg Whites, Oat Bran, Canola Oil, Salt, Fresh Garlic, and Pepper.  (This version is hereinafter referred to as "SP2").  SP2 removed the whole eggs listed in the previous version.  SP2 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for SP2 stated 70 calories and 4 grams of fat per serving.

49.     Starting in about July 2004, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Salt, Garlic, and Pepper.  (This version is hereinafter referred to as "SP3").  SP3 added arrowroot.  SP3 was shipped in packaging containing nine 38 gram serving size pancakes and the Nutritional Facts label for SP3 stated 40 calories and 2 grams of fat per serving.

50.     Starting in about December 2005, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potato, Onions, Egg Whites, Potato Flakes, Expeller Pressed Canola Oil, Salt, Garlic, and Black Pepper.  (This version is hereinafter referred to as "SP4").  SP4 replaced the oat bran listed in the previous version with potato flakes, removed arrowroot, and was gluten free.  SP4 was shipped in packages containing nine 38 gram

15

serving size pancakes and the Nutritional Facts label for SP4 stated 60 calories and 3.5 grams of fat per serving.

51.     Starting in about April 2006, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potatoes, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Salt, Garlic, Pepper, and All Natural Vegetable Gum. (This version is hereinafter referred to as "SP5").  SP5 replaced the potato flakes listed in the previous version with oat bran, added arrowroot, and added all natural vegetable gum.  SP5 was shipped in packages containing nine 38 gram serving size pancakes.

52.     Starting in about August 2006, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potato, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper, and All Natural Vegetable Gum. (This version is hereinafter referred to as "SP6").  SP6 added oat fiber.  SP6 was shipped in packages containing nine 38 gram serving size pancakes and the Nutritional Facts label for SP6 stated 60 calories and 3.5 grams of fat per serving.

53.     Starting in about May 2007 to the present, the listed ingredients for Spinach Pancakes produced by Defendants during this time included: Spinach, Potato, Onions, Egg Whites, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper, and All Natural Vegetable Gum.  (This version is hereinafter referred to as "SP7").  SP7 changed the pancake size, package size, and serving size from the previous version.  SP7 was shipped in packages containing six 57 gram serving size pancakes and the Nutritional Facts label for SP7 stated 80 calories and 4 grams of fat per serving.

54.     Prior to about August 2001, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, Egg Whites, String Beans, Zucchini, Oat Bran, Peas, Corn, Spinach, Broccoli, Chickpeas, Soy, Red Pepper, Corn Meal, Fresh Garlic, Soy Flake, Salt, Parsley, Black Pepper, Canola Oil. (This version is hereinafter referred to as "CVB1"). CVB1 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB1 stated 100 calories and 3.3 grams of fat per serving.

55.     Starting in about August 2001, the listed ingredients for California Veggie Burgers produced by Defendants during this time included soy beans and arrowroot. (This version is hereinafter referred to as "CVB2").

56.     Starting in about September 2002, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Zucchini, Oat Bran, Fresh Soy Beans, Sprouts, Peas, Corn, Spinach, Broccoli, Chickpeas, Soy, Red Pepper, Arrowroot, Corn Meal, Fresh Garlic, Soy Flake, Salt, Parsley, Black Pepper, Canola Oil. (This version is hereinafter referred to as "CVB3"). CVB3 had no egg whites as a listed ingredient, and thereby rendered this formulation "vegan". CVB3 included the Vegan Action vegan certification logo. CVB3 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB3 stated 100 calories and 3.3 grams of fat per serving.

57.     Starting in about December 2003, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Zucchini, Oat Bran, Soy Beans, Peas, Corn, Spinach, Broccoli, Chickpeas, Soy, Red Pepper, Arrowroot, Corn Meal, Garlic, Soy Flake, Salt, Parsley, Black Pepper, Expeller Pressed Canola Oil. (This version is hereinafter referred to as "CVB4"). CVB4 changed the description of "fresh garlic" to

17

"garlic". CVB4 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB4 stated 100 calories and 3.3 grams of fat per serving.

58.    Starting in about November 2004, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil, Corn, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper. (This version is hereinafter referred to as "CVB5"). CVB5 replaced the listed ingredients soy and soy flakes with textured soy flour, removed chick peas, and added corn starch. CVB5 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB5 stated 100 calories and 3.5 grams of fat per serving.

59.    Starting in about September 2004, Defendants produced a club size of California Veggie Burgers. The club size was a 60-ounce package, containing larger serving size burgers, that was primarily sold in food club stores. The listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil, Corn, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper. (This version is hereinafter referred to as "CVB6"). CBV6 was shipped in packages containing sixteen 107 gram serving size burgers and the Nutritional Facts label for CVB6 stated 110 calories and 4 grams of fat per serving.

60.    Starting in about October 2005, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil,

18

Corn, Arrowroot, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper. (This version is hereinafter referred to as "CVB7"). CVB7 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB7 stated 92 calories and 4 grams of fat per serving.

61. During March 2006, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil, Corn, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "CVB8"). CVB8 added all natural vegetable gum. CVB8 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB8 stated 110 calories and 4.5 grams of fat per serving.

62. Starting in about May 2006, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil, Corn, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "CVB9"). CVB9 removed the AHA heart symbol and checkmark. This version was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB9 stated 110 calories and 4.5 grams of fat per serving.

63. Starting in about July 2006, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soybeans, Zucchini, Oat Bran, Peas, Spinach, Expeller Pressed Canola Oil, Broccoli, Textured Soy Flour, Corn, Oat

Fiber, Red Pepper, Arrowroot, Corn Meal, Corn Starch, Garlic, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "CVB10"). CVB10 added oat fiber. This version was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB10 stated 110 calories and 4.5 grams of fat per serving.

64.     Starting in about August 2006 to the present, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soybeans, Zucchini, Oat Bran, Peas, Spinach, Expeller Pressed Canola Oil, Broccoli, Textured Soy Flour, Corn, Oat Fiber, Red Pepper, Arrowroot, Corn Meal, Corn Starch, Garlic, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "CVB11"). CVB11 contained less fiber than the previous version. This version was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for CVB11 stated 110 calories and 4.5 grams of fat per serving.

65.     During April 2006, Defendants produced a club size version of the California Veggie Burgers. The club size was a 60-ounce package, containing larger serving size burgers, that was primarily sold in food club stores. The listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soy Beans, Zucchini, Peas, Textured Soy Flour, Spinach, Broccoli, Oat Bran, Expeller Pressed Canola Oil, Corn, Red Pepper, Arrowroot, Corn Starch, Garlic, Corn Meal, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "CVB12"). CVB12 was shipped in packages containing sixteen 107 gram serving size burgers and the Nutritional Facts label for CVB12 stated 160 calories and 6 grams of fat per serving.

66.     Starting in about August 2006 to the present, the listed ingredients for California Veggie Burgers produced by Defendants during this time included: Carrots, Onions, String Beans, Soybeans, Zucchini, Oat Bran, Peas, Spinach, Expeller Pressed Canola Oil, Broccoli, Textured Soy Flour, Corn, Oat Fiber, Red Pepper, Arrowroot, Corn Meal, Corn Starch, Garlic, Salt, Parsley, Black Pepper, All Natural Vegetable Gum.  (This version is hereinafter referred to as "CVB13").  CVB13 includes oat fiber and removes the AHA heart symbol and check mark. CVB13 was shipped in packages containing sixteen 113 gram serving size burgers and the Nutritional Facts label for CVB13 stated 140 calories and 5 grams of fat per serving.

67.     Starting in about August 2001, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Onions, Corn, Fresh Soy Beans, String Beans, Black Beans, Zucchini, Oat Bran, Red Pepper, Peas, Spinach, Scallions, Broccoli, Chic Peas [sic], Cilantro, Soy, Jalapeno Peppers, Corn Meal, Fresh Garlic, Lime Juice, Soy Flake, Arrowroot, Salt, Cumin, Parsley, Pepper, Canola Oil.  (This version is hereinafter referred to as "TMVB1").  TMVB1 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB1 stated 100 calories and 3.3 grams of fat per serving.

68.     During April 2003, the Tex-Mex Veggie Burger produced by Defendants during this time were shipped in packaging with the AHA heart symbol and checkmark.  (This version is hereinafter referred to as "TMVB2").  TMVB2 was shipped in packaging containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB2 stated 100 calories and 3.3 grams of fat per serving.

69.    Starting in about June 2004, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Black Beans, Onions, String Beans, Corn, Oat Bran, Zucchini, Soy Beans (Edamame), Red Pepper, Peas, Soy Flake, Spinach, Broccoli, Scallions, Cilantro, Expeller Pressed Canola Oil, Arrowroot, Corn Starch, Garlic, Jalapeno Peppers, Salt, Chili Powder, Corn Meal, Parsley, Black Pepper.  (This version is hereinafter referred to as "TMVB3").  TMVB3 removed the chick peas, cumin, soy, and lime juice listed in the previous version, and added corn starch and chili powder.  This version was shipped in packages containing four individually wrapped 78 gram serving size burgers and the Nutritional Facts label for TMVB3 stated 100 calories and 3.5 grams of fat per serving.  The package for TMVB3 stated "5.5 net carbs".

70.    Starting in about November 2005, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Black Beans, Onions, String Beans, Corn, Oat Bran, Zucchini, Soy Beans, Edamame, Red Pepper, Peas, Soy Flake, Spinach, Broccoli, Cilantro, Expeller Pressed Canola Oil, Arrowroot, Corn Starch, Garlic, Jalapeno Peppers, Salt, Chili Powder, Corn Meal, Parsley, Black Pepper.  (This version is hereinafter referred to as "TMVB4").  TMVB4 removed the scallions listed in the previous version. TMVB4 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB4 stated 100 calories and 3.5 grams of fat per serving.

71.    Starting in about May 2006, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Black Beans, Onions, String Beans, Corn, Oat Bran, Zucchini, Soy Beans, Edamame, Red Pepper, Peas, Soy Flake, Spinach, Broccoli, Cilantro, Expeller Pressed Canola Oil, Arrowroot, Corn Starch, Garlic, Jalapeno Peppers, Salt, Chili Powder, Corn Meal, Parsley, Black Pepper, All Natural Vegetable Gum.  (This version is

22

hereinafter referred to as "TMVB5"). TMVB5 added all natural vegetable gum and removed the AHA heart symbol and checkmark. TMVB5 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB5 stated 110 calories and 4.5 grams of fat per serving.

72.     Starting in about July 2006, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Black Beans, Onions, String Beans, Corn, Zucchini, Soybeans, Oat Bran, Peas, Red Pepper, Spinach, Expeller Pressed Canola Oil, Broccoli, Textured Soy Flour, Oat Fiber, Arrowroot, Jalapeno Peppers, Chili Powder, Garlic, Corn Meal, Corn Starch, Cilantro, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "TMVB6"). TMVB6 added oat fiber. TMVB6 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB6 stated 110 calories and 4.5 grams of fat per serving.

73.     Starting in about August 2006 to the present, the listed ingredients for Tex-Mex Veggie Burgers produced by Defendants during this time included: Carrots, Black Beans, Onions, String Beans, Corn, Zucchini, Soybeans, Oat Bran, Peas, Red Pepper, Spinach, Expeller Pressed Canola Oil, Broccoli, Textured Soy Flour, Oat Fiber, Arrowroot, Jalapeno Peppers, Chili Powder, Garlic, Corn Meal, Corn Starch, Cilantro, Salt, Parsley, Black Pepper, All Natural Vegetable Gum. (This version is hereinafter referred to as "TMVB7"). TMVB7 contained less oat fiber than the previous formulation. TMVB7 was shipped in packages containing four 78 gram serving size burgers and the Nutritional Facts label for TMVB7 stated 110 calories and 4.5 grams of fat per serving.

74.     Starting in about July 2003, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Oat Bran, Canola Oil, Salt, Egg Whites, Pepper. (This version is hereinafter referred to as "PP1"). PP1 was shipped in packages containing nine 42.5 gram serving size pancakes and the Nutritional Facts label for PP1 stated 75 calories and 3 grams of fat per serving.

75.     Starting in about November 2004, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Spices. (This version is hereinafter referred to as "PP2"). PP2 added arrowroot and removed egg whites. PP2 was shipped in packages containing nine 40 gram serving size pancakes and the Nutritional Facts label for PP2 stated 50 calories and 2.5 grams of fat per serving.

76.     Starting in about November 2005, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Potato Flakes, Expeller Pressed Canola Oil, Salt, Pepper. (This version is hereinafter referred to as "PP3"). PP3 removed arrowroot and oat bran, added potato flakes, and was gluten free. PP3's shape also was changed to round. PP3 was shipped in packages containing nine 40 gram serving size pancakes and the Nutritional Facts label for PP3 stated 50 calories and 2 grams of fat per serving.

77.     Starting in about April 2006, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Oat Bran, Expeller Pressed Canola Oil, Arrowroot, Salt, Garlic, Pepper. All Natural Vegetable Gum. (This version is hereinafter referred to as "PP4"). PP4 added arrowroot, oat bran, and all natural vegetable gum. PP4 was shipped in packages containing nine 42 gram serving size pancakes.

78.     Starting in about September 2006, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper, All Natural Vegetable Gum.   (This version is hereinafter referred to as "PP5").  PP5 added oat fiber.  PP5 was shipped in packages containing nine 42 gram serving size pancakes and the Nutritional Facts label for PP5 stated 80 calories and 5 grams of fat per serving.

79.     Starting in about April 2007 to the present, the listed ingredients for Potato Pancakes produced by Defendants during this time included: Potatoes, Onions, Eggs, Oat Bran, Expeller Pressed Canola Oil, Oat Fiber, Arrowroot, Salt, Garlic, Pepper and All Natural Vegetable Gum. (This version is hereinafter referred to as "PP6").  PP6 changed the pancake size, package size, and serving size from the previous version.  PP6 was shipped in packages containing six 64 gram serving size pancakes and the Nutritional Facts label for PP6 stated 100 calories and 4 grams of fat per serving.

80.     Starting in 2002 to about 2003, Defendants replaced certain fresh ingredients with frozen ingredients in their products.

81.     On September 13, 2002, Defendants began using frozen onions instead of fresh onions in their products.

82.     On September 26, 2002, Defendants began using frozen carrots instead of fresh carrots in their products.

83.     On September 22, 2003, Defendants began using frozen zucchini instead of fresh zucchini in their products.

84.     In April 2003, Defendants began using expeller pressed canola oil for all of their products.

85.     In 2004 and again in 2005, incrementally larger capacity mixers and fryers were used.

86.     On January 14, 2004, a 34" fryer/spiral freezer went on line in Defendants' manufacturing facilities.

87.     On February 23, 2004, a 34" fryer/spiral freezer was first used for Dr. Praeger's veggie burgers.

88.     On March 25, 2004, Defendants began using 600mm punch machine in their manufacturing facilities.

89.     On November 5, 2004, Defendants began using a 4000 lb mixer in their manufacturing facilities.

90.     On March 1, 2005, Defendants began using a second 600mm punch machine in their manufacturing facilities.

91.     On September 9, 2005, a 40" fryer/spiral freezer went on line in Defendants' manufacturing facilities.

92.     On September 16, 2005, Defendants began using a 10000 lb mixer in use in their manufacturing facilities.

4.   **CONTESTED FACTS** (Proofs shall be limited at trial to the contested facts set forth. Failure to set forth any contested facts shall be deemed a waiver thereof.)

A.   Plaintiffs:

1.   At all relevant times, the fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes were significantly and substantially understated on the labels thereof.

2.   Defendants failed to take reasonable steps to ascertain the actual fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes.

3.   The database calculations Defendants used to measure the fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes were erroneous and consistently substantially understated such content.

4.   Defendants knew or should have known that the fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes was significantly understated on the labels thereof at all relevant times.

5.   Defendants misrepresented the fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes at all relevant times.

6.  Class members who purchased Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes during the Proposed Class Period suffered ascertainable losses.

7.  Plaintiffs reasonably relied to their detriment upon Defendants' misrepresentations as to the fat and caloric content of Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes.

8.  The Nutrition Labeling and Education Act requires that food products, including Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes, disclose certain nutrition information, including the amount of fat and the number of calories in a single serving of the product, on their packaging.

9.  The claims regarding Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes appear on the Defendants' website, www.drpraegers.com. These claims are the same as or substantially similar to the claims on the product labels.

10. Defendants have expressly claimed, *inter alia*, on product labeling and their website, that:

    (a)  Dr. Praeger's California Veggie Burgers and Tex-Mex Veggie Burgers contain 4 grams of fat and 92 calories per serving;

    (b)  Dr. Praeger's Broccoli Pancakes contain 2 grams of fat and 40 calories per serving;

28

      (c)     Dr. Praeger's Potato Pancakes contain 2.5 grams of fat and 50 calories per serving; and

      (d)     Dr. Praeger's Spinach Pancakes contain 2 grams of fat and 40 calories per serving.

11.    These representations were also intended to and did in fact imply to consumers that Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes were a relatively low fat, low calorie, healthy food choice.

12.    These representations were intended to and did in fact substantially increase sales of the products and the price that Defendants were able to charge for them.

13.    Defendants have spent millions of dollars in advertising, marketing and promoting their Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes.

14.    The Weight Watchers® "flexible *POINTS*® plan" is a point based system in which Weight Watchers® members seek to limit their food intake per day to a certain number of points depending on their age, weight goals and gender.  The calculation that Dr. Praeger's Veggie Burgers are a "1 Point" food was based upon the calories, fat and dietary fiber of the food as listed on the "Nutrition Facts" box on the product packaging.

15.    Weight Watchers® coaches recommend Dr. Praeger's Veggie Burgers as an excellent "1 Point" food to their members at weekly Weight Watchers® meetings.  In addition, Dr.

Praeger's Veggie Burgers were listed in Weight Watchers® *Complete Food Companion* as a "1 Point" food.

16.   Defendants represent and market their products as "perfect . . . for a health conscious lifestyle."

17.   At all relevant times, Dr. Peter Praeger was responsible for determining what information regarding the fat and caloric content of each of Defendants' products would be disclosed on the products' packaging.

18.   During the Proposed Class Period, the California Veggie Burgers, the Tex-Mex Veggie Burgers, and the Broccoli Pancakes packages prominently represented "Made with Oat Bran, Cholesterol Free, GMO [genetically modified organism] Free, No Trans Fatty Acids," once on the front and again on the back of the package.

19.   During the Proposed Class Period, the Potato Pancakes packages represented they are "For a Health Conscious Lifestyle", "Low in Saturated Fat" and "Low in Cholesterol."

20.   During the Proposed Class Period, the Potato Pancakes, the Broccoli Pancakes, and the Spinach packages have contained a red heart symbol with the phrase "Heart Healthy" in bold print.

21.   Defendants sold an undisclosed number of packages of Tex-Mex Veggie Burgers and an undisclosed number of packages of Potato Pancakes.

22.   The decision to refrain from laboratory testing of Defendants' products until 2006 was made by Dr. Peter Praeger.

23. Prior to late 2003, Dr. Peter Praeger calculated the nutritional content of Defendants' products for purposes of the Nutrition Facts label.

24. From late 2003 and prior to 2006, and at other times, the nutritional content of Defendants' products for purposes of the Nutrition Facts label was calculated or analyzed by or on behalf of Defendants using information from nutritional databases and Defendants' recipes. Jeffrey Cohen conducted these calculations and analyses, and, in doing so, added a factor for oil.

25. Nutritional testing conducted by Michelson Laboratories, Inc. on samples received in November 2005 showed that Dr. Praeger's California Veggie Burgers contained 7.49 grams of fat per serving and 171.2 calories per serving.

26. Nutritional testing conducted by QC Laboratories on samples received on February 3, 2006 showed that Dr. Praeger's California Veggie Burgers (107g) contained 8.21 grams of fat per serving and 173.63 calories per serving.

27. Nutritional testing conducted by QC Laboratories on samples received on February 3, 2006 showed that Dr. Praeger's Broccoli Pancakes (38g) contained 3.36 grams of fat per serving and 57.63 calories per serving.

28. Nutritional testing conducted by QC Laboratories on samples received on February 3, 2006 showed that Dr. Praeger's Spinach Pancakes (38g) contained 3.52 grams of fat per serving and 61.82 calories per serving.

29.    Nutritional testing conducted by QC Laboratories on samples received on February 3, 2006 showed that Dr. Praeger's Potato Pancakes (40g) contained 5.18 grams of fat per serving and 79.78 calories per serving.

30.    Nutritional testing conducted by QC Laboratories on samples received on February 9, 2006 showed that Dr. Praeger's California Veggie Burgers (107g) contained 6.01 grams of fat per serving and 157.35 calories per serving.

31.    Nutritional testing conducted by QC Laboratories on samples received on March 10, 2006, showed that Dr. Praeger's California Veggie Burgers (113g) contained 7.55 grams of fat per serving and 181.79 calories per serving.

32.    Nutritional testing conducted by QC Laboratories on samples received on March 10, 2006, showed that Dr. Praeger's California Veggie Burgers (Sample A) (106g) contained 8.15 grams of fat per serving and 169.19 calories per serving.

33.    Nutritional testing conducted by QC Laboratories on samples received on March 10, 2006, showed that Dr. Praeger's California Veggie Burgers (Sample B) (106g) contained 6.46 grams of fat per serving and 153.5 calories per serving.

34.    Nutritional testing conducted by QC Laboratories on samples received on March 10, 2006, showed that Dr. Praeger's Tex Mex Veggie Burgers (78g) contained 7.16 grams of fat per serving and 140.32 calories per serving.

35.    Nutritional testing conducted by Sani-Pure Food Laboratories on one set of samples received on March 14, 2006 showed that Dr. Praeger's California Veggie Burgers (107g) (NO6DA) contained 9.3 grams of fat per serving and 182.94 calories per serving.

32

36.   Nutritional testing conducted by Sani-Pure Food Laboratories on one set of samples received on March 14, 2006 showed that Dr. Praeger's California Veggie Burgers (107g) (WO5AG) contained 8.75 grams of fat per serving and 177.47 calories per serving.

37.   Nutritional testing conducted by Sani-Pure Food Laboratories on one set of samples received on March 14, 2006 showed that Dr. Praeger's California Veggie Burgers (78g) (HO6AC) contained 7.57 grams of fat per serving and 146.82 calories per serving.

38.   Nutritional testing conducted by Sani-Pure Food Laboratories on one set of samples received on April 7, 2006 showed that Dr. Praeger's Spinach Pancakes (38g) contained 4.32 grams of fat per serving.

39.   Nutritional testing conducted by Sani-Pure Food Laboratories on samples received on May 3, 2006 showed that Dr. Praeger's California veggie burgers (113g) contained 5.45 grams of fat per serving and 156.41 calories per serving.

40.   Nutritional testing conducted by ABC Research Corp. on samples received on May 25, 2006 showed that Dr. Praeger's California Veggie Burgers (78g) (Lot Code T06BG) contained 8.9 grams of fat per serving and 158 calories per serving.

41.   Nutritional testing conducted by ABC Research Corp. on samples received on May 25, 2006 showed that Dr. Praeger's Broccoli Pancakes (38g) (Lot Code N06BG) contained 3.8 grams of fat per serving and 61 calories per serving.

42.   Nutritional testing conducted by ABC Research Corp. on samples received in May 2006 showed that Dr. Praeger's Broccoli Pancakes (38g) (Lot Code R06CE) contained 3.3 grams of fat per serving and 59 calories per serving.

43.   Nutritional testing conducted by ABC Research Corp. on samples received in May 25, 2006 showed that Dr. Praeger's Potato Pancakes (40g) (Lot Code I05CH) contained 4.8 grams of fat per serving and 79 calories per serving.

44.   Nutritional testing conducted by ABC Research Corp. on samples received in May 25, 2006 showed that Dr. Praeger's Potato Pancakes (40g) (Lot Code R06CE) contained 3.7 grams of fat per serving and 69 calories per serving.

45.   Nutritional testing conducted by Sani-Pure Food Laboratories on samples received on June 14, 2006 showed that Dr. Praeger's California Veggie Burgers (78g) contained 5.91 grams of fat per serving.

46.   Nutritional testing conducted by Sani-Pure Food Laboratories on samples received on June 14, 2006 showed that Dr. Praeger's Tex-Mex Veggie Burgers (78g) contained 6.23 grams of fat per serving.

47.   Nutritional testing conducted by ABC Research Corp. on samples received in June 2006 showed that Dr. Praeger's California Veggie Burgers (Lot Code I05CH) contained 4.9 grams of fat per serving and 117 calories per serving.

48.   Nutritional testing conducted by ABC Research Corp. on samples received in June 2006 showed that Dr. Praeger's Spinach Pancakes (Lot Code W05AB) contained 4.2 grams of fat per serving and 67 calories per serving.

49.   Other than the formulations and packaging annexed as exhibits to the Certification of Jeffrey Cohen, dated June 22, 2007, no formulations or packaging for the products at issue have been produced by Defendants.

50.  Defendants have not produced any documents concerning any calculation of the amount of oil contained in the products at issue prior to March 2006.

51.  Despite efforts to reformulate Dr. Praeger's Broccoli Pancakes after April 2006, Defendants have been unable to manufacture Dr. Praeger's Broccoli Pancakes in a 38 gram serving size which contains 40 calories and 2 grams of fat per serving.

52.  Defendants did not produce a copy of the packaging for CVB2 and do not know what information was contained on the Nutrition Facts label for CVB2.

53.  Despite efforts to reformulate Dr. Praeger's Spinach Pancakes after April 2006, Defendants have been unable to manufacture Dr. Praeger's Spinach Pancakes in a 38 gram serving size which contains 40 calories and 2 grams of fat per serving.

54.  Despite efforts to reformulate Dr. Praeger's California Veggie Burgers after April 2006, Defendants have been unable to manufacture Dr. Praeger's California Veggie Burgers in a 78 gram serving size which contains 92 calories and 4 grams of fat per serving.

55.  Despite efforts to reformulate Dr. Praeger's California Veggie Burgers after April 2006, Defendants have been unable to manufacture Dr. Praeger's California Veggie Burgers in a 107 gram serving size which contains 110 calories and 4 grams of fat per serving.

56.  Despite efforts to reformulate Dr. Praeger's Tex-Mex Veggie Burgers after April 2006, Defendants have been unable to manufacture Dr. Praeger's Tex-Mex Veggie Burgers in a 78 gram serving size which contains 100 calories and 3.5 grams of fat per serving.

57. Defendants did not produce a copy of the packaging for PP4 and do not know what information was contained on the Nutrition Facts label for PP4.

58. Despite efforts to reformulate Dr. Praeger's Potato Pancakes after April 2006, Defendants have been unable to manufacture Dr. Praeger's Potato Pancakes in a 40 gram serving size which contains 50 calories and 2.5 grams of fat per serving.

59. The first retail sales of Dr. Praeger's California Veggie Burgers in the United States were made on December 12, 1995.

60. From the beginning of 2000 through the end of 2006, Defendants sold: (i) more than 6,000,000 packages of California Veggie Burgers; (ii) more than 1,400,000 packages of Spinach Pancakes; and (iii) more than 900,000 packages of Broccoli Pancakes.

B.    Defendants:

1. None of the named Plaintiffs ever purchased the Tex-Mex Veggie Burgers or Potato Pancakes.

2. ABC Research Corp. was not accredited by the A2LA to perform the particular laboratory tests that were used to determine fat content, at the time the tests were conducted.

3. ABC Research Corp. lost its A2LA accreditation to perform the particular tests that were used to determine fat content.

4. Plaintiffs' Expert Katherine W. Barry has testified that any test results from laboratory testing of Defendants' products applies only to the sample(s) tested.

5. No laboratory testing was ever performed on any of Defendants' products purchased by any Plaintiff.

6.    Plaintiffs failed to retain any of the original packaging evidencing the nutrition labels for the Defendants' products they purchased.

7.    Plaintiffs destroyed the only samples of the Defendants' products that they had laboratory tested by ABC Research Co., despite the knowledge that such samples were the subject of litigation and that the destruction of such samples would prejudice Defendants.

8.    Plaintiffs' tests were conducted on products that were all produced after September 2005.

9.    Plaintiffs' tests were conducted on samples obtained from single packages of each of the products that were laboratory tested.

10.    Plaintiffs did not review the nutrition label each time they purchased any of the products at issue.

11.    Plaintiffs never saw any advertisements for any of Defendants' products prior to their purchases.

12.    None of the Plaintiffs are able to establish that they know whether the products they purchased, in fact, contained more fat and calories than the labels indicated.

13.    Defendants produced and sold a total of at least forty different versions of California Veggie Burgers, Tex-Mex Veggie Burgers, Spinach Pancakes, Broccoli Pancakes, and Potato Pancakes, during the Proposed Class Period.

14.    During the Proposed Class Period, Defendants produced and sold at least thirteen different versions of the California Veggie Burgers, containing different ingredients, mixed in different proportions, produced using different production methods and equipment, and packaged or labeled differently.

15.    During the Proposed Class Period, Defendants produced and sold at least seven different versions of the Tex-Mex Veggie Burgers, containing different ingredients, mixed in different

proportions, produced using different production methods and equipment, and packaged or labeled differently.

16.    During the Proposed Class Period, Defendants produced and sold at least six different versions of the Potato Pancakes, containing different ingredients, mixed in different proportions, produced using different production methods and equipment, and packaged or labeled differently.

17.    During the Proposed Class Period, Defendants produced and sold at least seven different versions of the Broccoli Pancakes, containing different ingredients, mixed in different proportions, produced using different production methods and equipment, and packaged or labeled differently.

18.    During the Proposed Class Period, Defendants produced and sold at least seven different versions of the Spinach Pancakes, containing different ingredients, mixed in different proportions, produced using different production methods and equipment, and packaged or labeled differently.

19.    During the Proposed Class Period, Defendants produced and sold different serving sizes of the California Veggie Burgers, including a 78 gram serving size, 107 gram serving size, and 113 gram serving size. The fat and caloric content for these different serving sizes varied from 92 to 160 calories, and from 3.3 to 6.0 grams of fat per serving.

20.    During the Proposed Class Period, Defendants produced and sold different serving sizes of the Tex-Mex Veggie Burgers. The fat and caloric content for each of these different serving sizes varied from 100 to 110 calories, and from 3.3 to 4.5 grams of fat per serving.

21.     During the Proposed Class Period, Defendants produced and sold different serving sizes of the Potato Pancakes, including. The fat and caloric content for each of these different serving sizes varied from 50 to 100 calories, and from 2.0 to 5.0 grams of fat per serving.

22.     During the Proposed Class Period, Defendants produced and sold different serving sizes of the Broccoli Pancakes, including 38 gram and 57 gram serving sizes. The fat and caloric content for each of these different serving sizes varied from 40 to 70 calories, and from 2.0 to 3.5 grams of fat per serving.

23.     During the Proposed Class Period, Defendants produced and sold different serving sizes of the Spinach Pancakes, including 38 gram and 57 gram serving sizes. The fat and caloric content for each of these different serving sizes varied from 40 to 80 calories, and from 2.0 to 4.0 grams of fat per serving.

24.     Each of the five products involved in this lawsuit contains multiple natural ingredients with different nutrient profiles that vary in nutrient content depending upon numerous factors, including the source of the ingredients, the region, climate and soil where the ingredients were grown and the conditions and temperatures in which the ingredients were transported and stored. In addition, changes in the processing equipment, production methods, recipes and ingredients all could materially affect the nutrient content of the finished product.

25.     Plaintiffs fail to specify which serving sizes of which versions of the Defendants' products were allegedly mislabeled.

26.     The FDA considers fat to be an essential nutrient in the human diet. The daily reference value of fat for a 2,000 caloric daily diet is 65 grams or less, of which no more than 20 grams should consist of saturated fat, with the remaining 45 grams from polyunsaturated or monounsaturated fat.

27.     As compared to other cooking oils, canola oil contains more monounsaturated and polyunsaturated fat and less saturated fat than flaxseed oil, olive oil, palm oil, melted butter and coconut oil.  In October 2006, after performing a thorough analysis, the FDA determined that there was sufficient scientific evidence for a qualified health claim regarding the relationship between canola oil and a reduction in risk of coronary heart disease.  The FDA then issued an Enforcement Discretion Letter granting a petition authorizing health claims for products containing certain minimum amounts of canola oil.

28.     The FDA recommends, but has never required that food manufacturers conduct laboratory tests of nutrient content to verify the Nutrition Facts on food product labels, and advised Defendants as much; it advises that companies may decide for themselves how they will determine the nutrient levels to display on the labels of their food products.  The FDA states in the regulations how it will enforce the requirements.

29.     The FDA is also cognizant of the reality that values for some nutrients, such as fat, are dependent upon the analytical procedure used.  Because analytical variability may be a function of the method selected and its inherent variability, the laboratory performing the analysis, the level of nutrient in the food, and the ability to obtain a homogeneous sample composite, the FDA has declined to require that food manufacturers use a specific type of analytical methodology for nutrient determination.

30.     The FDA regulations embody many provisions that reflect the fact that food nutrition labeling is not an exact science.  For instance, the regulations state that food manufacturers must round nutrient values on the label declarations to "avoid the impression of unwarranted accuracy as well as to make a label easier for a consumer to review and understand.  In particular, with regard to "Total fat," the FDA regulations provide that amounts shall be expressed to the nearest

0.5 (1/2) gram increment below 5 grams and to the nearest gram increment above 5 grams. Likewise, a statement of the caloric content per serving, expressed to the nearest 5-calorie increment up to and including 50 calories, and 10-caloric increment above 50 calories, except that amounts less than 5 calories may be expressed as zero.

31.     The FDA regulations also allow a margin of error in nutrient label declarations.  With regard to polyunsaturated and monounsaturated fat, for example, the FDA regulations provide that the nutrient content of the composite [must be] at least equal to 80 percent of the value for that nutrient declared on the label.  The regulations further provide that reasonable excesses of polyunsaturated or monounsaturated fat over labeled amounts are acceptable within current good manufacturing practice.

32.     Likewise, the total fat and caloric content of a food product may be within 20% in excess of the value for that nutrient declared on the label (hereinafter "the 20% rule").  For example, if a production lot of a food product subject to the Act is labeled as containing 5 grams of total fat per serving, but actually contains 6 grams of total fat per serving, the FDA would not consider that production lot of the product to be misbranded under the Act.

33.     To ensure that the results of a laboratory test for nutrient content truly represent the nutrient content of an entire production lot, the FDA mandates a testing protocol.  That protocol requires that a sample to be tested for its nutrient content shall consist of a composite of 12 subsamples (consumer units), taken one from each of 12 different, randomly-chosen shipping cases, to be representative of a lot.  Accordingly, the FDA would not consider a laboratory test for nutrient content of a sample from a single package to be sufficient to support an enforcement action under the NLEA even if that test showed a wide disparity between the labeled values and the nutrient content of the package.

34.    Prior to 2006, Defendants relied upon data from nutrient databases, including the United States Department of Agriculture National Nutrient Database for Standard Reference to calculate the nutrient content of their products for the Nutrition Facts label required by the Nutritional Labeling and Education Act of 1990.

35.    This database provides a statistical average of the nutrient content of various ingredients and accounts for the natural variability of foods.

36.    These calculations were based on the quantities of the various ingredients combined in each recipe for each version, as well as, the quantity of the canola oil used to cook the products. Copies of these calculations have been provided to Plaintiffs.

37.    After Defendants were notified of the alleged mislabeling, they promptly investigated the matter.

38.    The FDA's Center for Food Safety and Applied Nutrition concluded that any potentially affected products were not likely to pose a hazard to health.

39.    There are a number of factors that cause variability of nutrient content of foods.

40.    A combination of ingredient, equipment, and production changes caused the some packages of some versions of the five products at issue to absorb unanticipated residual amounts of the canola oil used to cook the products.

41.    Since 2006, Defendants have voluntarily submitted all of their products for regular laboratory testing, including products that are or were still in development or were experimental and never sold.

42.    Defendants reformulated their products by, among other things, adding all-natural vegetable gum as an ingredient, and implementing certain production and equipment changes, and updated the labels of Defendants' products to reflect the reformulation.

43.     Laboratory testing of products that Defendants have produced and sold have shown that the fat and caloric content is consistent with what is stated on the nutrition labels.

44.     After determining that there had been "proper disposition of the recalled articles," the FDA officially completed its audit of Defendants' recall and terminated the informal enforcement proceeding in February 2007.

45.     Consumers purchase Defendants' products for a variety of reasons, including many reasons that have nothing to do with fat or caloric content, such as: taste; recommendations; requests by household members; all natural ingredients; vegan or vegetarian ingredients; presence of canola oil; no or low cholesterol; low sodium; high fiber; no artificial additives, preservatives, or colors; no trans fats; low or no saturated fats; low carbohydrates; and/or other elements of the packaging of the products such as the "Dear Valued Customer" message and Dr. Praeger's photograph.

46.     Plaintiffs purchased Defendants' products for a variety of reasons, including many reasons that have nothing to do with fat or caloric content.

47.     Plaintiff Elias testified that she purchased the California Veggie Burgers for a variety of reasons, including the following: because it was a meatless product and she was observing Lent, it was recommended to her by her coworkers, she believed the California Veggie Burger tasted better than other brands of veggie burgers, the all-natural ingredients, the recognizable ingredients, canola oil as an ingredient, the absence of chemical preservatives or additives or colorants, her husband requested the product, and the AHA heart check mark.

48.     Plaintiff Elias testified that the reason she stopped purchasing the California Veggie Burgers was because Lent ended.

49.    Plaintiff Elias never saw any advertisements for Defendants' products prior to her purchases.

50.    Plaintiff Elias testified that she probably never reviewed the nutrition label after her initial purchase.

51.    Plaintiff Elias purchases canola oil for frying because she believes it to be healthy.

52.    Plaintiff Elias fried the California Veggie Burgers she purchased, slowly in a pan with olive oil.

53.    Plaintiff Elias purchased approximately six boxes of the 11 oz. packages of California Veggie Burgers (each package contained four 78 gram servings), for a total of approximately $60.00 ($10.00 per package).

54.    Plaintiff Elias never had the California Veggie Burgers that she purchased actually tested by any laboratory for nutrient content.

55.    Plaintiff Elias lost 57 pounds over the course of over one year, during which she consumed California Veggie Burgers for over three months.

56.    Plaintiff Scher testified that that she purchased the California Veggie Burgers  and Spinach Pancakes for a variety of reasons, including the following: because it was a meatless product and she is vegetarian, it was recommended to her by her friend, she believed the California Veggie Burger tasted better than other brands of veggie burgers, the all-natural ingredients, vegetable ingredients, no saturated fat, no trans fat, low carbohydrates, "Dear Valued Customer" message, no cholesterol, egg whites as an ingredient, spinach as an ingredient, and the AHA heart check mark.

57.    Plaintiff Scher purchased one box of the California Veggie Burgers (11 oz. package containing four 78 gram servings) and one box of the Spinach Pancakes (12 oz. package

containing six 38 gram servings) every week, for two years and nine months, with the exception of a semester spent abroad.

58.    Plaintiff Scher never saw any advertisements for the California Veggie Burgers or Spinach Pancakes prior to her purchases.

59.    Plaintiff Scher testified that each box of California Veggie Burgers and Spinach Pancakes cost approximately $5.00 each.

60.    Plaintiff Scher never had the California Veggie Burgers or Spinach Pancakes that she purchased actually tested by any laboratory for nutrient content.

61.    During the time period that Plaintiff Scher purchased the Defendants' products, several versions of the California Veggie Burgers and Spinach Pancakes were produced and sold.

62.    Plaintiff Scher looks for canola oil as an ingredient in the food products she purchases.

63.    Plaintiff Scher would consume one to two servings of the California Veggie Burgers at a time, and half a box of Spinach Pancakes at a time.

64.    Plaintiff Scher believes that her expenditures on Defendants' products would amount to approximately $1,500.00 in total.

65.    Plaintiff Baez testified that that she purchased the club size California Veggie Burgers or a variety of reasons, including the following: because it was low in sodium,  the all-natural ingredients, no saturated fat, no trans fat, oat bran as an ingredient, and the AHA heart check mark.

66.    Plaintiff Baez purchased one box of the club size package of California Veggie Burgers (60 oz. package containing sixteen 107 gram servings), but consumed only a portion of the package because she did not care for the taste, and gave the remainder to her grandson.

67. Plaintiff Baez testified that she believed that the club size California Veggie Burgers that she purchased (107 gram serving size) were labeled as containing 4 grams of fat and 92 calories. In fact, this label was the label on the packages containing the 78 gram serving size.

68. Plaintiff Baez believes the only package of club size California Veggie Burgers she purchased cost approximately $10.00.

69. Plaintiff Baez never had the California Veggie Burgers that she purchased actually tested by any laboratory for nutrient content.

70. Plaintiff Tosi that that she purchased the Broccoli Pancakes and Spinach Pancakes or a variety of reasons, including the following: recommendation by a friend who commented that children loved the taste, all-natural ingredients, low in sodium, taste, she could see the vegetables, no trans fat, no saturated fat, and no cholesterol.

71. Plaintiff Tosi never saw any advertisements for Defendants' products prior to her purchases of the Broccoli Pancakes or Spinach Pancakes.

72. Plaintiff Tosi purchased, on average, approximately one box of either product every month.

73. Plaintiff Tosi purchased the 12 oz. packages containing nine servings, of both the Broccoli Pancakes and the Spinach Pancakes.

74. Plaintiff Tosi believes that her total purchases of the Broccoli Pancakes and Spinach Pancakes were between $115.50 - $132.00, with each package costing approximately $3.50 - $4.00.

75. Plaintiff Tosi never had the Broccoli Pancakes or the Spinach Pancakes that she purchased, actually tested by any laboratory for nutrient content.

76.     Plaintiff Tosi testified that she still would have bought the Defendants' products and in fact, did continue to purchase Defendants' products, even after she heard of the alleged mislabeling.

77.     Plaintiff Tosi testified that she continued to purchase and consume the Broccoli Pancakes and Spinach Pancakes because of taste and relative healthiness.

78.     Plaintiff Tosi believes her purported damages to be 25% less the total cost of the Broccoli Pancakes and Spinach Pancakes that she purchased.

79.     Defendants do not specifically market their products as "low-fat" or "low in calories" and none of the five products at issue during the Class Period were labeled in such a manner.

80.     The Weight Watchers Points Companion does not specify which serving size of Dr. Praeger's California Veggie Burger qualified as "1 Point".

81.     There are no laboratory tests that show that all packages, of all versions, of all five products at issue, were mislabeled during the Class Period.

82.     Plaintiffs have not been able to show that all packages of all versions of all five products at issue were mislabeled during the Class Period.

83.     Plaintiffs have not been able to show that they have been harmed in any way by the alleged mislabeling.

84.     Plaintiffs have not been able to establish class damages.

85.     Plaintiffs received benefits from their consumption of Defendants' products.

86.     Plaintiffs have not been able to show that they relied upon the fat and caloric content of the five products at issue.

87.     Plaintiffs' claims do not precede 2001.

88.     Defendants are a small, family owned and operated business, headed by two New Jersey-based Cardiac Surgeons – Dr. Peter Praeger and Dr. Eric Somberg.

89.     Defendants offer a line of kosher, all natural, frozen food products that are comparatively low in fat and sodium and free of trans fats, cholesterol and artificial ingredients.

90.     Three of defendants' most popular products are their California Veggie Burgers, Spinach Pancakes and Broccoli Pancakes, each of which is sold under the Dr. Praeger's Sensible Foods brand name to natural food stores, supermarkets, food club stores and institutions, as well as, directly to the public through defendants' website.

91.     None of the named plaintiffs ever purchased two of the five products (Tex-Mex Veggie Burgers or Potato Pancakes).

92.     None of the named plaintiffs purchased any Spinach or Broccoli Pancakes until 2001 or any California Veggie Burgers until 2003 and that their total individual expenditures on the products ranged from about $10.00 to no more than $1500.

93.     The only evidence that may support plaintiffs' mislabeling claims are laboratory tests of certain versions of the products manufactured between September 2005 and April 2006.

94.     During that period, defendants' total U.S. non-institutional sales of the three products actually purchased by the named plaintiffs amounted to about $5.7 million.

95.     Because defendants are not large companies with the benefit of immediately recognizable brand names, they take particular pride in having developed enormous consumer trust and loyalty in their brand over the years, solely through the quality of their products.

96.     Even before this lawsuit was filed in June 2006, they implemented an FDA-supervised voluntary recall, issued refunds and discount coupons, reformulated the products and corrected

the labels.  In addition, regular laboratory testing has now been put into place to further prevent even such unintentional occurrences in the future.

97.     Defendants took reasonable steps to ascertain the fat and caloric content of their products.

98.     Defendants took reasonable steps to identify the source of the alleged mislabeling of certain of the products.

99.     Defendants never intentionally misrepresented the fat and caloric content of their products.

100.    In order to respond to customer comments about the consistency of some of Defendants' products, Defendants modified cooking time and cooking temperature.

101.    Class members who purchased Dr. Praeger's California Veggie Burgers, Tex-Mex Veggie Burgers, Potato Pancakes, Broccoli Pancakes, and Spinach Pancakes did not suffer ascertainable losses.

102.    Under FDA supervision, Defendants initiated a voluntary recall of certain versions of the California Veggie Burgers and the Tex-Mex Veggie Burgers on May 11, 2006.

103.    None of the testing laboratories dispute the fact that the laboratory test results of Defendants' products apply only to the samples tested and cannot be extrapolated to any other packages of any of Defendants' products.

104.    None of the Plaintiffs claim that they have sustained any personally injuries related to their consumption of Defendants' products.

105.    Several of Defendants' products have been reviewed positively for taste by several food critics.

106.    Several of Defendants' products have been recommended by food critics.

107.    Three of the four named Plaintiffs testified that they first purchased the products based upon the "recommendation" of a friend, co-worker or food critic.  One plaintiff purchased only one of the products, once, while another continued to buy the products even after she became aware of the mislabeling because she enjoyed the taste so much.

108.    Each of the named Plaintiffs became involved in this case only at the suggestion of a relative or friend employed by Troutman Sanders. The mother of one of the named Plaintiffs is a partner at Troutman Sanders, who will likely share in fees generated by the firm in this case. Another was referred to class counsel by her daughter-in-law, a secretary at Troutman Sanders; while the other two were directed to class counsel by friends, one working as a paralegal, the other as a secretary; both at Troutman Sanders.

5.     **FACT WITNESSES**: (Aside from those called for impeachment purpose, only the fact witnesses set forth by name and address may testify at trial.  No summary of testimony is necessary.)

A.     Plaintiff:

Alexandria Elias,  510 Ingraham Lane, New Hyde Park, NY

Roxanne Scher 165 East 35th Street, 10I, New York, NY 10016

Dolores Baez, 338 Easton Street, Ronkonkoma, New York

Jennifer Tosi, 12 East 86th Street, Apt 921, New York, NY 10028

Katherine Barry, ABC Research Corp., 3437 SW 24th Avenue, Gainesville, Florida 32607

Peter Praeger, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Jeffrey Cohen, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Larry Praeger, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Porus Aria, QC Labs, Inc., 1205 Industrial Boulevard, Southampton, PA 18966-0514

Stephen Roesch, Michelson Laboratories, 6280 Chalet Drive, Commerce, CA 90040-3761

Ronald Schnitzer, Sani-Pure Food Labs,178-182 Saddle Rive Road, Saddle Brook, NJ 07663

B.     Defendant:

Jeffrey Cohen, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Peter Praeger, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Larry Praeger, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Ellen Somberg, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Danielle Praeger, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Adam Somberg, Ungar's Food Products, 9 Boumar Place, Elmwood Park, New Jersey 07407

Antonia Demas, Ph.D., 60 Cayuga Street, Trumansburg, NY  14886

Anthony Criscuolo, Jr., Food and Drug Administration, New Jersey District, 10 Waterview Boulevard, Parsippany, New Jersey 07054

Matthew J. Aaronson, Troutman Sanders, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174

6.     **EXPERT WITNESSES:** (No expert shall be permitted to testify at trial unless identified below by name and address and unless the expert's curriculum vitae and report are attached hereto.  An expert's qualifications may not be questioned unless the basis therefore is set forth herein.)[*]

A.     **Plaintiffs:**

Joe M. Regenstein, Cornell University, Stocking Hall, Ithaca, NY 14850

David A. Levitsky, Cornell University, 112 Savage Hall, Ithaca, NY 14850

Katherine W. Barry, ABC Research Corporation, 3437 SW 24th Avenue, Gainesville, FL  32607

B.     **Defendant's objections to plaintiff's expert qualifications:**

David A. Levitsky:  Defendants object to Plaintiffs' expert David A. Levitsky on the basis that he lacks the requisite qualifications to offer his expert opinions.  Defendants also refer the Court to Section 2 for anticipated motions in limine.

Joe M. Regenstein: Defendants object to Plaintiffs' expert Joe M. Regenstein on the basis that he lacks the requisite qualifications to offer his expert opinions.  Defendants also refer the Court to Section 2 for anticipated motions in limine.

Katherine W. Barry: Defendants object to Plaintiffs' expert Katherine W. Barry on the basis that she lacks the requisite qualifications to offer her expert opinion.  Defendants also refer the Court to Section 2 for anticipated motions in limine.

C.     **Defendants:**

Elizabeth Campbell, 9301 Copernicus Drive, Lanham, MD  20706

D.     **Plaintiffs' objections to defendant's expert qualifications:**

---

[*] If the parties stipulate to an expert's qualifications there is no need to attach a curriculum vitae.  In any event, however, the expert's report must be attached.

Plaintiffs object to Ms. Campbell's qualification as an expert in this matter. As will be fully detailed in Plaintiffs' contemplated motion to exclude, Ms. Campbell's testimony is not calculated to assist the trier of fact to understand the evidence or determine a fact in issue and is not relevant to the matters at issue in this action.

7.    **DEPOSITION:** Not later than _by Judge Hayden_ , any party seeking to offer evidence by deposition shall so advise the opposing parties. Within 14 days thereof, all parties are directed to prepare a joint agreed statement, in narrative form, of the testimony which would be given by the deponent if called under oath. No colloquy between counsel shall be included. The agreed statement is not a concession of the factual accuracy of the deponent's testimony. Absent prior leave of Court, no deposition testimony may be offered except as provided herein.

Within 14 days of the first date above, the parties shall simultaneously exchange and submit to the Court any objections to the deposition testimony proposed above. The objections shall note, separately as to each such challenged portion of the deposition, applicable cases or rules which underlie the objection. If a party fails to comply with this paragraph, the challenged deposition testimony shall be deemed admitted.



8.     **EXHIBITS** (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial.  Objections to authenticity are deemed waived unless such objections are set forth).[*]

A.     Plaintiff:  [REFER TO ATTACHED EXHIBIT LIST HERE]

B.     Defendant's objection to authenticity:

Exhs. 43 and 44;

Exhs. 143 - 145;

Exhs. 147 – 148;

Exhs. 152 – 157;

Exhs. 162 – 163;

Exh. 176;

Exhs. 224 – 226;

Exhs. 227 – 231;

Exh. 279

C.     Defendant:  [REFER TO ATTACHED EXHIBIT LIST HERE]

D.     Plaintiff's objections to authenticity:

Exh. 1 – withdrawn

Exh. 5

Exh. 10

Exh. 13

Exhs. 15-17

Exhs. 85-133

Exhs. 140-143

Exhs. 146-147

Exh. 149

---

[*] The exhibit lists should follow this page.

Exh. 155

Exhs. 161-174

Exh. 176

Exhs. 199-200

Exhs. 202-203

Exh. 206

Exh. 209

Exhs. 214-270

9.    **SINGLE LIST OF LEGAL ISSUES** (All issues shall be set forth below.  The parties
need not agree on any issue.  Any issue not listed shall be deemed waived.)

1. Whether at all material times Ungar's was a "person" within the meaning of the New
   Jersey Consumer Fraud Act, Section 56:8-1.

2. Whether at all material times Sensible Foods was a "person" within the meaning of the
   New Jersey Consumer Fraud Act, Section 56:8-1.

3. Whether the misrepresentations and/or deception and/or concealment and/or omission of
   the material facts regarding the fat and caloric content of Dr. Praeger's Veggie Burgers
   and Dr. Praeger's Vegetable Pancakes occurred in connection with Defendants' conduct
   of trade and commerce in New Jersey and throughout the United States.

4. Whether Defendants' practices regarding the fat and caloric content of Dr. Praeger's
   Veggie Burgers and Dr. Praeger's Vegetable Pancakes were unconscionable, deceptive,
   fraudulent, under false pretense or false promises, misrepresentations, and/or a knowing
   concealment, suppression or omission under the New Jersey Consumer Fraud Act,
   Section 56:8-2.

5. Whether as a direct and proximate result of Defendants' violations of the New Jersey
   Consumer Fraud Act, Plaintiffs have suffered damages, and have suffered ascertainable
   losses attributable to conduct made unlawful by the New Jersey Consumer Fraud Act.

6. Whether, as a result of Defandants' violations of the New Jersey Consumer Fraud Act,
   Plaintiffs are entitled to damages, in an amount equal to three times the monies expended
   on Dr. Praeger's Veggie Burgers and Dr. Praeger's Vegetable Pancakes, plus attorneys'
   fees and costs.

7. Whether the Defendants' affirmations of fact and/or promises relating to their Dr.
   Praeger's Veggie Burgers and Dr. Praeger's Vegetable Pancakes created express

warranties that the products would conform to Defendants' affirmations of fact and/or promises.

8. Whether the Defendants' descriptions of their Dr. Praeger's Veggie Burgers and Dr. Praeger's Vegetable Pancakes became part of the bases of the bargains, creating express warranties that the products purchased by Plaintiffs would conform to Defendants' descriptions and specifications.

9. Whether the products purchased by Plaintiffs failed to conform to Defendants' descriptions and specifications.

10. Whether as a result of Defendants' breach of the express warranties that the products purchased by Plaintiffs would conform to Defendants' descriptions and specifications, Plaintiffs suffered damages, in that the value of the products they purchased was less than as warranted by Defendants.

11. Whether in making representations of fact to Plaintiffs, Defendants failed to fulfill their duties to disclose the material facts regarding the products purchased by Plaintiffs.

12. Whether the direct and proximate causes of Defendants' failure to disclose the material facts regarding the products purchased by Plaintiffs was Defendants' reckless, negligent, careless, or intentional wrongful conduct.

13. Whether Plaintiffs reasonably relied upon Defendants' false representations or breaches of duty to their detriment.

14. Whether Plaintiffs have suffered damages by reason of their reasonable reliance upon Defendants' failures to disclose the material facts regarding the products purchased.

15. Whether any named plaintiff has individual standing to sue with regard to claims relating to the Tex-Mex Veggie Burgers;

16. Whether each named plaintiff has individual standing to sue with regard to claims relating to the California Veggie Burgers;

17. Whether any named plaintiff has individual standing to sue with regard to claims relating to the Potato Pancakes;

18. Whether each named plaintiff has individual standing to sue with regard to claims relating to the Spinach Pancakes;

19. Whether each named plaintiff has individual standing to sue with regard to claims relating to the Broccoli Pancakes;

20. Whether any named plaintiff has standing to represent the proposed class with regard to claims relating to the Tex-Mex Veggie Burgers;

21. Whether each named plaintiff is an adequate representative of the proposed class with regard to claims relating to the California Veggie Burgers;

22. Whether any named plaintiff is an adequate representative of the proposed class with regard to claims relating to the Potato Pancakes;

23. Whether each named plaintiff is an adequate representative of the proposed class with regard to claims relating to the Spinach Pancakes;

24. Whether each named plaintiff is an adequate representative of the proposed class with regard to claims relating to the Broccoli Pancakes;

25. Whether some or all of plaintiffs' claims are preempted by the federal Nutrition Labeling and Education Act of 1990 ("NLEA") and/or applicable FDA regulations;

26. Whether some or all plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction;

27. Whether plaintiffs' state law claims relating to the Tex-Mex Veggie Burgers and the California Veggie Burgers are preempted and/or barred by the doctrine of primary jurisdiction to the extent that those two products were previously the subject of an FDA formal or informal enforcement action, specifically a voluntary recall, which the FDA monitored and declared to be terminated in February 2007;

28. Whether a cause of action can be based on a food product label's declaration of fat and/or caloric content where the food product complies with, and would not be deemed "misbranded" under the NLEA and/or applicable federal regulations;

29. Whether New Jersey law governs the negligent misrepresentation, breach of warranty and New Jersey Consumer Fraud Act ("NJCFA") claims of some or all members of the proposed class, and if not, which jurisdiction's law is applicable;

30. Whether a private cause of action exists for claims regarding nutritional food labeling;

31. Whether any of the proposed class members' claims are barred in whole or in part by the applicable statute(s) of limitations;

32. Whether any of the proposed class members can satisfy their burden to prove that the products they purchased were inaccurately labeled;

33. Whether any of the proposed class members' alleged damages are legally sufficient to constitute ascertainable loss;

34. Whether any of the proposed class members can satisfy their burden to prove the causation element of their NJCFA claim;

35. Whether plaintiffs are legally entitled to treble damages under the NJCFA;

36. Whether plaintiffs are legally entitled to attorneys' fees under the NJCFA;

37. Whether Defendants have a legal duty to ensure that each individual package of their products contains the fat and/or caloric content listed on the packaging;

38. Whether Defendants have a legal duty to ensure that the actual fat and/or caloric content of their food products is the exact same amount that is indicated on the label;

39. Whether each member of the proposed class must prove that the products they purchased were inaccurately labeled;

40. Whether the allegedly inaccurate information was material;

41. Whether each member of the proposed class must prove that they read the allegedly inaccurate information in order to prove reliance;

42. Whether each member of the proposed class must prove reliance;

43. Whether each member of the proposed class must prove that they read the allegedly inaccurate information each time they purchased the product;

44. Whether each member of the proposed class was comparatively negligent;

45. Whether each member of the proposed class can show that any alleged inaccurate statements created an express warranty;

46. Whether each member of the proposed class gave notice to Defendants of the alleged breach of warranty;

47. Whether each member of the proposed class gave Defendants the opportunity to cure any alleged breach;

48. Whether each member of the proposed class must prove that the allegedly inaccurate information formed the basis of the bargain;

49. Whether each member of the proposed class must prove that each package, of each version, of the product was inaccurately labeled each time they purchased the product;

50. Whether each member of the proposed class can prove that each package, of each version, of each of the products they purchased were inaccurately labeled without laboratory tests performed on each package, of each version, of the actual products they purchased;

51. Whether each member of the proposed class can prove that the products they purchased were inaccurately labeled in the absence of having retained the actual packaging from the products they purchased;

52. Whether laboratory testing of a sample from one single package, of one version, of Defendants' products is legally sufficient to establish that any other version of Defendants' products were inaccurately labeled;

53. Whether evidence of laboratory testing is legally sufficient to establish that each of the seven different versions of the Tex-Mex Veggie Burgers were labeled incorrectly;

54. Whether laboratory testing of a sample taken from a single package of Defendants' products is legally sufficient to establish that a sample taken from another package of defendant's products would yield the same test results;

55. Whether laboratory testing of a sample taken from one version of Defendants' California Veggie Burgers establishes that the same result will be obtained for each of the other versions of California Veggie Burgers;

56. Whether laboratory testing of a sample taken from one version of Defendants' Potato Pancakes establishes that the same result will be obtained for each of the other versions of Potato Pancakes;

57. Whether laboratory testing of a sample taken from one version of Defendants' Spinach Pancakes establishes that the same result will be obtained for each of the other versions of Spinach Pancakes;

58.  Whether laboratory testing of a sample taken from one version of Defendants' Broccoli Pancakes establishes that the same result will be obtained for each of the other versions of Broccoli Pancakes;

59. Whether each member of the proposed class suffered cognizable and compensable damages;

60. Whether each member of the proposed class had a duty to mitigate damages;

61. Whether each member of the proposed class is entitled to damages beyond nominal damages;

62. Whether members of the proposed class are legally entitled to punitive damages;

63. Whether N.J.S.A. 2A:15-5.14(b) limits any award of punitive damages to members of the class;

64. Whether an award of punitive damages is reasonable in its amount and justified in the circumstances of the case, in light of the purpose to punish the defendant and to deter that defendant from repeating such conduct.

65. Whether Defendants are entitled to an offset of damages;

66. Whether the trial should be bifurcated/trifurcated between liability and damages/punitive damages pursuant to N.J.S.A. 2A:15-5.13;

67. Whether plaintiffs' claims, allegations and/or relief sought are frivolous;

68. Whether the theories and techniques employed by any of plaintiffs' expert witnesses have been tested; whether they have been subjected to peer review and publication; whether

the techniques employed by the expert have a known error rate; whether they are subject to standards governing their application; and whether the theories and techniques employed by the expert enjoy widespread acceptance.

*[handwritten margin note: See Sec 2]*

69. Whether any of plaintiffs' expert witnesses should be precluded from offering their net opinions;

70. Whether any of plaintiffs' expert witnesses are not qualified to testify as experts;

*[handwritten margin note: to be raised at oral it at oral or...]*

71. Whether any of plaintiffs' expert witnesses should be precluded from testifying as to matters, opinions, conclusions and/or facts outside of their expert reports;

72. Whether destruction and/or withholding of drafts or other documents reviewed and/or relied upon by an expert witness warrants preclusion of their expert reports;

73. Whether the expert report of David A. Levitsky should be stricken due to spoliation of evidence;

*[handwritten margin note: See Sec 2]*

74. Whether the expert reports of Joe M. Regenstein should be stricken due to spoliation of evidence;

75. Whether the expert report of Katherine W. Barry should be stricken due to spoliation of evidence;

76. Whether destruction and/or withholding of test samples and/or laboratory testing reports warrants preclusion of an expert report or other sanctions against plaintiffs;

77. Whether Defendants are entitled to a spoliation jury instruction;

78. Whether the plaintiffs can prove by a preponderance of the evidence that any of the products purchased by members of the proposed class in 2001 were inaccurately labeled;

79. Whether the plaintiffs can prove by a preponderance of the evidence that any of the products purchased by members of the proposed class in 2002 were inaccurately labeled;

80. Whether the plaintiffs can prove by a preponderance of the evidence that any of the products purchased by members of the proposed class in 2003 were inaccurately labeled;

81. Whether the plaintiffs can prove by a preponderance of the evidence that any of the products purchased by members of the proposed class in 2004 were inaccurately labeled;

82. Whether the plaintiffs can prove by a preponderance of the evidence that the products purchased in 2005 were inaccurately labeled;

83. Whether the plaintiffs can prove by a preponderance of the evidence that the products purchased in 2006 were inaccurately labeled;

84. Whether the plaintiffs can prove by a preponderance of the evidence that the products purchased in 2007 were inaccurately labeled;

85. Whether each of the named plaintiffs should be precluded from testifying that the products were inaccurately labeled;

86. Whether any of plaintiffs' witnesses should be precluded from speculating as to whether Defendants' products were inaccurately labeled;

87. Whether plaintiffs are entitled to a presumption or inference of reliance and/or causation;

88. Whether Defendants are entitled to rebut any presumption or inference of reliance and/or causation;

89. Whether purchasing Defendants' products subsequent to becoming aware of the allegations of inaccurate labeling bar any or all of plaintiffs' claims, in whole or in part;

90. Whether plaintiffs can establish the requisite chain of custody for each product claimed to have been the subject of laboratory testing;

91. Whether plaintiffs meet the jurisdictional threshold for damages under the Class Action Fairness Act ("CAFA");

*See Section 2*

92. Whether plaintiffs should be sanctioned due to spoliation of evidence;

93. Whether proposed class counsel for plaintiffs should be disqualified because the testimony of attorneys from that firm will be necessary to establish purchase, chain of custody, disposition, storage of samples and packaging of Defendants' products sent for laboratory testing by plaintiffs.

10.   **CONCLUSION**

A.   MISCELLANEOUS:  (Set forth any matters which require action or should be brought to the attention of the Court.)

   None

B.   TRIAL COUNSEL:

   **Plaintiffs:** David J. Sheehan, Charles P. Greenman, Clement H. Berne, Matthew J. Aaronson, Eric L. Unis

   **Defendants:** David R. Gross, James H. Gianninoto, David A Cohen, Una Y. Kang, Rina Grassotti

C.   JURY TRIALS:

   Not later than ___To be set by judge___.

   1.   Each party shall submit <u>to the District Judge and to opposing counsel</u> a trial brief in accordance with Local Civil Rule 7.2(b) with citations to authorities and arguments in support of its position on all dispute issues of law. THE BRIEF SHALL ALSO ADDRESS ANY ANTICIPATED EVIDENCE DISPUTE. In any event a brief is not submitted, the delinquent party's pleading may be stricken.

   2.   Any hypothetical questions to be put to an expert witness on direct examination shall be submitted <u>to the District Judge and to opposing counsel</u>.

   3.   Each party shall <u>submit to the District Judge and to opposing counsel</u> proposed <u>voir dire</u>.

   4.   Plaintiff shall <u>submit to opposing counsel</u>, proposed jury instructions. Each instruction shall be on a <u>separate</u> sheet of <u>legal sized paper</u> and shall be numbered in sequence. Each instruction shall include citations to authorities, if any.

   Within 7 days of the above, opposing counsel shall, on the face of the instructions submitted by plaintiff, set forth any objections to the proposed jury instructions and/or proposed counter-instructions.

D.   NON-JURY TRIALS:

   Not later than ___not applicable___.

   1.   Each party shall submit <u>to the District Judge and to opposing counsel</u> a trial brief in accordance with Local Civil Rule 7.2(b) with citations to

authorities and arguments in support of its position on all disputed issues of law. THE BRIEF SHALL ALSO ADDRESS ANY ANTICIPATED EVIDENCE DISPUTE.  In any event a brief is not submitted, the delinquent party's pleading may be stricken.

> 2.      Any hypothetical questions to be put to an expert witness on direct examination shall be submitted to the District Judge and to opposing counsel.

> 3.      Proposed Findings of Fact and Conclusions of Law shall be submitted to the District Judge and to opposing counsel after the close of evidence.  These shall include annotations to trial transcripts and exhibits.

E.      BIFURCATION (When appropriate, liability issues shall be severed and tried to verdict.  Thereafter, damage issues will be tried to the same jury.)

> Defendants request the issues of liability and damages/punitive damages be bifurcated/trifurcated. *If there is to bifurcation or trifucation, it shall not be determined [...]*

F.      ESTIMATED LENGTH OF TRIAL

> 6 days for liability and

> 2 days for damages

G.      TRIAL DATE: *To be set*

H.      *Settlement/Pretrial Conference.  To be set*

AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS
THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE
AMENDMENT IS DISALLOWED.  THE COURT MAY FROM TIME TO TIME SCHEDULE
CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE
REQUEST OF COUNSEL.


By: _____

DAVID R. GROSS, ESQ.
SAIBER SCHLESINGER SATZ
    & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333
Attorneys for Defendants

By: _____

DAVID J. SHEEHAN, ESQ.
TROUTMAN SANDERS LLP
One Riverfront Plaza
The Legal Center
Newark, New Jersey 07102-5311
(973) 645-0772
Attorneys for Plaintiffs

_____
HON. PATTY SHWARTZ
United States Magistrate Judge