UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDRIA ELIAS, et al., <br><br> Plaintiffs, <br> v. <br><br> UNGAR'S FOOD PRODUCTS, INC., d/b/a DR. PRAEGER'S SENSIBLE FOODS, et. al., <br><br> Defendants. | Civ. Action No. 06-2448 (KSH) <br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court upon appeal by defendant Ungar's Food Products, Inc., d/b/a Dr. Praeger's Sensible Foods's and Sensible Foods LLC d/b/a Dr. Praeger's Sensible Foods (collectively, "defendants") of Magistrate Judge Shwartz's order of December 19, 2008 (D.E. 91) denying defendants' request for leave to file a motion for summary judgment and motion to decertify the class. This action, with which familiarity is assumed, alleges that independent testing of defendants' products, which are marketed as foods that contribute to a healthy lifestyle, revealed that the nutritional information on the packaging misrepresents the fat and caloric content of those products. The Court's June 30, 2008 opinion (D.E. 69) certified "claims under the NJCFA and for breach of express warranty for the following class: All persons in the United States who purchased Dr. Praeger's Frozen California Veggie Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes from May 30, 2000 through August 31, 2007."

In their appeal papers, defendants describe the motions proposed before Judge Shwartz:

1

>(1) a <u>motion for summary judgment</u> on the ground that the named plaintiffs – New York residents who purchased the Defendant's food products in New York and Maryland – have no claim under the New Jersey Consumer Fraud Act ("NJCFA"), either because New Jersey law does not apply to their claims under a new choice-of-law standard adopted recently by the New Jersey Supreme Court [*P.V. v. Camp Jaycee*], or because they lack standing under the remedy to non-resident consumers who purchase products beyond New Jersey's borders; and
>
>(2) a <u>motion for decertification</u> of the class previously certified by this Court, not only because the new choice-of-law test mandates the application of the laws of the fifty states, but also because a different standard now applies to the class certification issue, a standard the Plaintiffs cannot satisfy.

(Defs.' Br. 1.)  The Court will consider whether Judge Shwartz's ruling in denying leave to file the motions was clearly erroneous or contrary to law.

**I.      Judge Shwartz's December 19, 2008 Order**

Judge Shwartz's order denying leave found that the proposed motions were not listed in the Final Pretrial Order where the parties were directed to list all contemplated motions.  Judge Shwartz also found that because the analysis originally performed regarding choice-of-law issues in her Report and Recommendation included consideration of the factors set forth in *P.V. v. Camp Jaycee*, 197 N.J. 132 (2008), and because the analysis was consistent with the views expressed in *Camp Jaycee*, then the motion would not result in a different outcome.  She found that defendants did not present any new facts or law that would support their request to add a pretrial motion challenging the availability of a private right of action for out-of-state purchasers, as the existence of such purchasers and the statute were known to the parties, and the settled decisional law indicated to Judge Shwartz that the motion would be futile.

Based upon defendants' request for leave, Judge Shwartz determined that they intended to reargue issues already decided on class certification and raised in objections to the earlier Report and Recommendation, and that no new facts were presented following the Final Pretrial Conference that called for the presentation of the decertification motion.  She also concluded that

2

no manifest injustice would result if the defendants were to seek amendment of the Final Pretrial Order and it was subsequently denied.

## II.     Standard of Review

In non-dispositive pretrial matters such as this, a district court must "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "The district court is bound by the clearly erroneous rule in findings of facts; the phrase 'contrary to law' indicates plenary review as to matters of law."  *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).  The burden rests with the party filing the appeal to show that a ruling is "clearly erroneous or contrary to law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008).

## III.    Discussion

*A. Effect of Final Pretrial Order on Ability to File the Motions*

Defendants argue that Section 2 of the Final Pretrial Order required the parties to list "pending or contemplated motions" but that it did not provide that motions not listed are barred. (Defs.' Br. 13.)  Thus, defendants posit that the Final Pretrial Order "cannot be interpreted to preclude their filing."  (*Id.*)  Defendants argue that because "the Order does not contain an explicit deadline for the filing of summary judgment motions, the Defendants have the right to file them."  (Defs.' Br. 14-15 (citing *In re School Asbestos Litig.*, 977 F.2d 764 794 (3d Cir. 1992)).)

Plaintiffs point out that the instructions for Section 2 of the Final Pretrial Order state to "[s]et forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar.  Also set forth the nature of the motion." (D.E. 58, at p. 3.)  Indeed, defendants set forth over a dozen motions in the Final Pretrial Order, and even listed a contemplated motion

3

to dismiss for lack of subject matter jurisdiction that it would file *in the contingency that the Court denied class certification*. That contemplated motion was itemized as: "A 12(b)(1) Motion to Dismiss Plaintiffs' claims for lack of subject matter jurisdiction, *should the Court deny class certification*." (D.E. 58, at p. 5 (emphasis added).) This undercuts defendants' claims that it could not have been expected to "anticipate in advance" an adverse decision on the choice of law issue or could not have foreseen the need to move for decertification. Defendants manifestly drafted the Final Pretrial Order with the outcome of the class certification motion in mind and could have expected to need to move for decertification (if certification was granted) just as they, in fact, foresaw a need to move for dismissal if class certification was declined.

In addition, defendants were put on notice by Judge Shwartz's Report and Recommendation of September 7, 2007 (D.E. 48) that New Jersey law should control all class members' claims. Thus, defendants could have anticipated during the creation of the Final Pretrial Order the need to later move to challenge that choice-of-law determination. Merely because defendants later obtained certain legislative history materials regarding the NJCFA, they are not excused from omitting that motion from the list of anticipated motions. Accordingly, because defendants failed to identify in the Final Pretrial Order either the motion for summary judgment due to change of law, or the motion for decertification, Judge Shwartz properly denied permission to file these motions.

Judge Shwartz's decision may also be affirmed on other grounds.

*B. Whether Denial of Amendment of Final Pretrial Order to Add the Summary Judgment Motion Would Work a Manifest Injustice Against Defendants*

*i.          Effect of the New Jersey Supreme Court's P.V. v. Camp Jaycee Decision*

Judge Shwartz found that the *P.V. v. Camp Jaycee* decision would not have changed the outcome of her Report and Recommendation even if it were issued prior to her decision because she considered the *Camp Jaycee* factors in finding that New Jersey law would apply.

In *Camp Jaycee*, the New Jersey Supreme Court announced that although it would thereafter "continu[e] to denominate [its] standard as a kind of governmental interest test," it would "now apply the Second Restatement's most significant relationship standard in tort cases." *Camp Jaycee*, 197 N.J. at 142-43. "Under that standard," the New Jersey Supreme Court stated, "the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues." *Id.* at 143. "The Second Restatement assessment takes place on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* (citing *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3d Cir. 1975)). New Jersey's "most significant relationship" choice-of-law test is a two-step analysis in which the Court must first "examin[e] the substance of the potentially applicable laws" to determine whether an actual conflict exists. *Camp Jaycee*, 197 N.J. at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)).

In her September 2007 Report and Recommendation, Judge Shwartz conducted an analysis that weighed whether New Jersey—or a different state—had the most significant relationship to the claims in this case.

> The Court now considers whether New Jersey is the state with the most significant relationship with the parties and events of this litigation, and thus maintains the greatest interest in having its law govern the consumer fraud claim. *See Dal Ponte*, 2006 WL 2403982, at *5. New Jersey is the location of defendants' place of business, where it maintains its headquarter offices, plans its product development, advertising, promotion, and marketing strategies, and the state where it manufactures and ships its products. Certification of Jeffery Cohen

5

>dated June 22, 2007 ("Cohen Cert.") at Ex.1-3,5-10,12-34, 36, 37, 39; see also Defts. Br. at 3; Pls. Reply Br. at 5. Thus, all of the products and the statements about them were conceived in and emanated from New Jersey. Furthermore, as the source of the allegedly false statements are New Jersey residents, New Jersey has a strong interest in deterring fraudulent conduct by its domestic businesses and compensating consumers who are victims of such fraud, including consumers outside New Jersey. *See Dal Ponte*, 2006 WL 2403982, at 7; *see also International Union*, 384 N.J. Super. at 294-97.
>
>New Jersey's interest in protecting consumers is evidenced by its comprehensive consumer fraud law. In fact, "[t]he available legislative history demonstrates that the NJCFA was intended to be one of the strongest consumer protection laws in the nation." *See Dal Ponte*, 2006 WL 2403982, at 6 (citing *New Mea Construction Corp. v. Harper,* 203 N.J. Super. 486, 497 (App. Div. 1985)). Furthermore, both of the cases on which Defendants rely, Merck and Fink, concluded that the NJCFA generally provides a higher level of protection for consumer-plaintiffs through measures that make it easier for consumer-plaintiffs to recover in lawsuits against businesses engaging in fraudulent practices, and thus members of the proposed class residing in other states will generally be afforded no less protection under the NJCFA than their home state, and, in fact, may receive greater protection. *See Dal Ponte*, 2006 WL 2403982, at 7; *see also International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, Civ. No. ATL-L-3015-03, 2005 WL 2205341, *20 (L. Div. July 29, 2005); *Fink,* 365 N.J. Super. at 570-74. As a result, the application of NJCFA does not trample upon other states' interest in protecting their consumers from fraud.
>
>The Court "concludes that New Jersey has the strongest interest in applying its consumer fraud statute," *Dal Ponte*, 2006 WL 2403982, at 7, as defendants have sufficient contacts with New Jersey, the essence of this cause of action emanates from New Jersey, and New Jersey's policy of deterring fraudulent conduct by domestic businesses and compensating consumers who are victims of fraud by such businesses is significantly implicated by this litigation. Therefore, the Court will apply the NJCFA to all members of the class, including those who reside in states other than New Jersey.

(D.E. 48, pp. 17-18.)  In the above analysis, Judge Shwartz concluded that New Jersey had the most significant relationship with the claims because it is where defendant is based, and is the locale where it plans, conducts product development, arranges advertising, creates marketing strategies, and is also the state in which it manufactures and ships its products.  Further, because New Jersey's contacts—both qualitatively and quantitatively—outweigh those of the various

6

states where class members were injured, then the standard of *Camp Jaycee* is satisfied.[1] In short, a new choice-of-law analysis would reach the same result under *Camp Jaycee*, and a motion based upon the new precedent would therefore be futile on the merits.

ii.  *Effect of Newly-Accessed Legislative History Documents Relating to the NJCFA's Intent of a Private Right of Action for Out-of-State Purchasers*

Defendants also seek leave to move for summary judgment on the ground that they possess newly-discovered legislative history documents which demonstrate that the New Jersey Legislature did not intend for out-of-state plaintiffs to have a private right of action under the NJCFA. In denying leave to make the motion, Judge Shwartz determined that the motion would be futile because it is settled that an out-of-state plaintiff may be a plaintiff under the NJCFA. As Judge Irenas of this District stated in *Boyes v. Greenwich Boat Works*:

> This court has little doubt that the New Jersey Legislature intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey. Courts have declared that the Consumer Fraud Act should be construed liberally in favor of protecting consumers.

*Boyes v. Greenwich Boat Works*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998).

Further, it is apparent from defendants' papers that the legislative history materials they seek to present in their contemplated motions have been in the New Jersey State Archives for decades and were available to the public for that entire period. (Defs.' Br. 21.) The court declines to unseat longstanding precedent interpreting the NJCFA to apply to out-of-state plaintiffs based upon recently unearthed archival information that had presumably always been available from the state archives.

---

[1] This result is consistent with the Court's recent decision in *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 2009 U.S. Dist. LEXIS 55404 (D.N.J. June 30, 2009), in which the plaintiff—who was unable to obtain class certification or establish subject matter jurisdiction—sought statutory damages under the Telephone Consumer Protection Act ("TCPA") for receipt of a single injurious facsimile received in New York, which rendered New York the state with the most significant relationship. That non-precedential and unreported decision is inapposite here because in this case the class, which is already certified, encompasses all purchasers nationwide over a certain period, and there is no state with a "more significant relationship" than New Jersey.

*C. Whether Defendants Presented Any New Basis for Class Decertification*

Defendants also appeal the denial of leave to file a motion for decertification of the class previously certified in the Court's June 30, 2008 order. As defendants point out, a decision granting class certification "may be altered or amended at any time before final judgment." *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 n.8 (3d Cir. 2006). Defendants submit that the Court should revisit the certification issue because it can now draw from an expanded record. (D.E. 27.) Defendants argue that, at this stage, plaintiffs must prove "precisely what they have alleged . . . . that the alleged misrepresentations caused all class members to 'purchase products that they would not have purchased had they known the truth about them.'" (Defs.' Br. 32 (citing *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 238 (D.N.J. 2008).)

Defendants contend, for instance, that they are entitled to move for decertification because they assert that: (1) plaintiffs cannot establish that Defendants sold products after May 10, 2006 (the date of an FDA-supervised recall) containing inaccurate information about fat and calorie content; and (2) plaintiffs must now provide proof of a "causal nexus between defendant's acts and the claimed damages." (Defs.' Br. 31-32.) If permitted to file their decertification motion, defendants would aim to show that an individual inquiry would be necessary for each class member to show this causal connection, a proposition already rejected by this Court. (*Id.* at 32.)

In order to warrant motion practice to decertify the earlier-certified class, the Court must be presented with a changed factual situation that renders the original certification "unsound." *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) ("[A] district court is obliged to take cognizance of a changed factual situation and may alter an earlier order

8

accordingly. Moreover, the Committee Notes on Rule 23 envision modification of a class certification if, upon fuller development of the facts, the original determination appears unsound."). As Judge Shwartz properly found, because there is no indication that new facts have been unearthed that would change the class certification decision, then there is no reason to permit a decertification motion.

The cases cited by defendants as entitling them to move for class decertification are unhelpful to their position. The *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 324 (3d Cir. 2008) decision does not address a whether a decertification motion may be made—but merely shows that an analysis under Rule 23 must consider all evidence, including expert reports and stands for the proposition that "[g]enuine disputes with respect to the Rule 23 requirements must be resolved, after considering all relevant evidence submitted by the parties." The Court, and Judge Shwartz, complied with this standard in granting class certification.

Defendants' reliance upon *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008), is misplaced because that case involved car dealers with "quite diverse" interests suing the manufacturer. In finding insufficient typicality between claims, the Court observed that "proposed class members will likely need to pursue different, and possibly conflicting, legal theories to succeed." *Id.* Unlike the *Danvers* class members, here plaintiffs share typicality in that all are purchasers of particular consumer goods within a seven-year period. Moreover, whereas the *Danvers* case turned on "whether Ford's conduct vis-a-vis a particular dealer violated the dealer's state's franchise laws," this action will largely be concerned with a single body of law, the NJCFA.

*C. Whether Denial of Leave for Defendants' Proposed Motions Violates Their Due Process Rights.*

Defendants assert that denying them their right to file motions for summary judgment and for decertification violates their due process rights. In making her ruling, however, Judge Shwartz considered defendants' December 15, 2008 written application seeking a telephone conference regarding leave to file their motions (D.E. 87), as well as a December 19, 2008 letter (D.E. 90) replying to plaintiffs' opposition to granting such leave. In addition, Judge Shwartz properly construed defendants' request as one to amend the Final Pretrial Order, ultimately finding that defendants would suffer no "manifest injustice" from denial of this leave. Accordingly, Judge Shwartz afforded defendants appropriate due process to demonstrate their grounds for making dispositive motions.

**IV.   Conclusion**

For the foregoing reasons, Judge Shwartz's order of December 19, 2008 (D.E. 91) denying defendants' request for leave to file motions for summary judgment to decertify the class was not clearly erroneous or contrary to law, and is affirmed in its entirety.

/s/Katharine S. Hayden
Hon. Katharine S. Hayden
U.S. District Judge